FRANKLYN HENRY, Appellant, v ALBERT B. LEWIS, as Superintendent of Insurance of the State of New York, Respondent.

First Department, June 28, 1984

### APPEARANCES OF COUNSEL

*Seth P. Stein* of counsel (*Seligman, Stein & Abramowitz,* attorneys), for appellant.

*Robert S. Hammer* of counsel (*Melvyn R. Leventhal* and *Richard G. Liskov* with him on the brief; *Robert Abrams, Attorney-General,* attorney), for respondent.

### OPINION OF THE COURT

SULLIVAN, J.

Petitioner, a psychiatrist, was served with a subpoena to appear before respondent, the Superintendent of Insurance of the State of New York, to give evidence in an official

investigation "into the affairs, conduct and practices of Travelers Insurance Company", and to produce the medical records of 15 named individuals, as well as certain specified office records of his with respect to those individuals for the period from January 1, 1978 to April 30, 1982. The other records sought consisted of five categories: petitioner's appointment books or diaries; his records of billings to Travelers; his records of receipts from Travelers; his records of billings to the named individuals; and his records of receipts from these individuals.

After unsuccessfully seeking withdrawal of the subpoena, petitioner moved to quash on the ground that the records sought contained information necessarily acquired in attending a patient in a professional capacity, the disclosure of which, even the acknowledgment that an individual was a patient, would violate the physician-patient privilege contained in CPLR 4504 (subd [a]).[1] The Superintendent cross-moved to compel compliance.

In support of his position, the Superintendent submitted the affidavit of an investigator for the Insurance Department's Frauds Bureau, who stated that an investigation had been commenced pursuant to section 38-c of the Insurance Law concerning reports of the filing of suspicious claims by 15 Pan Am employees under a Travelers' group health policy for reimbursement of expenses for professional services allegedly rendered by petitioner. In verifying the claims, however, it turned out that the employees, all members of flight crews, were flying at the times and dates specified. Moreover, the employees, after preliminary inquiries, denied having any telephone consultations with petitioner on the dates in question. Concluding that false claims may have been filed in violation of section 176.05 of the Penal Law and section 38-b of the Insurance Law, the investigator served the subpoena in question. As to the claim of privilege, the investigator cited the standard provision in the group insurance claim form authorizing the release of any medical information which is necessary to a determination of the employee's benefit entitle-

1. In pertinent part CPLR 4504 (subd [a]) provides: "Confidential information privileged. Unless the patient waives the privilege, a person authorized to practice medicine * * * shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity."

ment. The investigator also pointed out that if the services claimed were, in fact, never rendered, petitioner could not have any information as regards these employees to which the physician-patient privilege would attach.

In opposing the Superintendent's cross motion, petitioner argued that, absent express language to that effect, the purported medical release contained in the insurance claim form did not run to the benefit of the Superintendent. Petitioner also, for the first time, invoked his constitutional privilege against self incrimination, both as to his appearance to give testimony and as to the records sought.

Special Term denied the motion and directed compliance with the subpoena, finding, *inter alia,* that the employees whose records were sought had, "pursuant to standard release language contained in a group insurance claim form", authorized disclosure of their medical records. Citing *People v Doe* (59 NY2d 655), it also rejected petitioner's assertion of the privilege against self incrimination. Petitioner appealed. The parties thereafter stipulated, pending determination of the appeal, to the adjournment, *sine die,* of the return date of the subpoena. Since we find that all of the records sought are protected by one or the other of the privileges asserted we modify to quash the subpoena to the extent that it calls for the production of these records, except for the dates of treatment contained in the employees' medical records.

Not all of the records sought fall within the physician-patient privilege codified in CPLR 4504. Only the information which a physician obtains in his professional capacity and which is needed to diagnose and treat a condition is so protected. (*People v Decina,* 2 NY2d 133, 141-143.) A physician is free to testify as to the fact that he has treated a patient and the occasions of his treatment. (*Klein v Prudential Ins. Co.,* 221 NY 449, 453; *Patten v United Life & Acc. Ins. Assn.,* 133 NY 450, 453; *Matter of Lee Mem. Hosp.,* 115 F Supp 643, 645-646, affd 209 F2d 122, cert den *sub nom. Cincotta v United States,* 347 US 960.) Thus, if petitioner's billing and receipt records and his appointment books or diaries are to find protection from the Superintendent's subpoena it must come from petitioner's assertion of the privilege against self incrimination.

The privilege against self incrimination "applies to the business records of the sole proprietor or sole practitioner as well as to personal documents containing more intimate information about the individual's private life." (*Bellis v United States,* 417 US 85, 87-88.) In *People v Doe (supra),* however, the Court of Appeals held that the privilege against self incrimination may not be asserted with respect to records which, by law, are required to be kept. (See, also, *Shapiro v United States,* 335 US 1.) Since physicians are required under the regulations of the Board of Regents to maintain "a record for each patient which accurately reflects the evaluation and treatment of the patient" (8 NYCRR 29.2 [3]), the privilege against self incrimination may not be invoked as to a patient's medical records.

Neither the Superintendent nor Special Term cites any statutory authority or regulation requiring a physician to maintain billing and receipt records and appointment books or diaries. *Doe (supra)* thus abrogates the privilege against self incrimination only as to the medical records requested since the other records sought are not required to be kept under law.

The United States Supreme Court has recently decided, however, that because of the absence of compulsion, the contents of voluntarily maintained business records are not privileged under the Fifth Amendment. (*United States v Doe,* 465 US __, 52 USLW 4296.) In the same decision, the court held that the act of producing such documents may nevertheless be privileged, since a government subpoena compels the holder of a document "to perform an act that may have * * * an incriminating effect" (*supra,* p __, p 4298). Citing *Fisher v United States* (425 US 391) the court left open the possibility that in certain circumstances the act of production might only have "minimal testimonial value" and thus, "not operate to incriminate the taxpayer" (465 US, at p __, 52 USLW, at p 4299). In *Fisher (supra,* p 410) the court had stated: "Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena. *Curcio* v. *United States,* 354 U.S. 118, 125 (1957). The elements of compulsion are

clearly present, but the more difficult issues are whether the tacit averments of the taxpayer are both 'testimonial' and 'incriminating' for purposes of applying the Fifth Amendment. These questions perhaps do not lend themselves to categorical answers; their resolution may instead depend on the facts and circumstances of particular cases or classes thereof." Thus, the contents of none of the records sought, whether maintained voluntarily, as in the case of the five categories of office records, or involuntarily, as in the case of patients' medical records, are entitled to Fifth Amendment protection.

Nevertheless, since the act of producing his billing and receipt records and appointment books or diaries has communicative aspects which, no doubt, would be incriminatory, petitioner is entitled to assert his Fifth Amendment privilege as to these records. The act of production would, for instance, compel petitioner to admit tacitly that the records exist, that they are in his possession and that they accurately reflect whatever is contained therein. Thus, production of these documents would have more than minimal testimonial value. Furthermore, since apparently the Superintendent's own investigation to date has led him to conclude that fraud has been committed, any production of petitioner's records which establishes that some of his patients were purportedly treated at a time they were on a flight, or that they were never treated at all, would likely incriminate him. Thus, the subpoena must be quashed as to the five categories of office records, consisting of petitioner's appointment books or diaries and his billing and receipt records as to both Travelers and the named employees, which are not required by law to be kept or disclosed to a public agency.

The sixth category of records sought, the employees' medical records, are, as already noted, and as conceded by petitioner, not privileged under the Fifth Amendment since they are required to be maintained. (See *Shapiro v United States,* 335 US 1, 33, *supra; People v Doe,* 59 NY2d 655, 656, *supra.*) We believe, however, that these records are still beyond the subpoena's reach since they fall within the CPLR 4504 physician-patient privilege. Special Term held that the privilege was unavailable because the em-

ployees had waived their right to privacy by signing a disclosure form authorizing their "employer or The Travelers to release or obtain any information which may be necessary to determine benefits payable under the benefit plan with The Travelers."[2] Nowhere in the disclosure form is the Superintendent or the Department of Insurance mentioned as a possible recipient of privileged medical information.

While the physician-patient privilege contained in CPLR 4504 may be contractually waived (McLaughlin, 1968 Supplementary Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, 1964-1983 Supp Pamph, CPLR 4504, p 224), including by contract of insurance (see *Lynch v Mutual Life Ins. Co.,* 55 Misc 2d 179), such contractual waivers are strictly construed and limited to their express terms. (See *Greene v New England Mut. Life Ins. Co.,* 108 Misc 2d 540.) An authorization to release medical information to a specific party does not constitute a waiver of the physician-patient privilege as far as other parties are concerned. This is particularly true in the case of patients who seek reimbursement under health insurance plans. In documenting their claims, these patients are routinely obliged to authorize their physicians to disclose privileged information to their insurers. Such waiver cannot be construed as effecting a blanket authorization to any and all who may seek access to the patient's medical records. Thus, the Superintendent may not claim the benefit of the limited waiver involved herein.

The Superintendent, citing *Matter of Camperlengo v Blum* (56 NY2d 251) and pointing to his broad powers under section 38 (subd 2, pars [a], [b]) of the Insurance Law to investigate fraudulent conduct in, among other things, the adjustment and payment of losses, argues that the physician-patient privilege, a creature of statute, has been abrogated to the extent necessary to investigate instances of insurance fraud. In *Camperlengo (supra),* however, the

---

**2.** Although neither a copy of the claim form containing the authorization nor the text thereof was ever produced or set forth in the Superintendent's papers at Special Term, a copy of the claim form was appended to his brief in this court. Petitioner's motion to strike the brief on the ground it contained appended material not part of the record was denied. An appellate court may receive incontrovertible documentary evidence, dehors the record, offered for the purpose of sustaining a judgment. (See *Matter of Dwyer,* 57 AD2d 772.)

Court of Appeals cited Federal law (US Code, tit 42, § 1396a, subd [a], par [27]) and State regulatory provisions (18 NYCRR 540.7 [a] [1], [8]) explicitly requiring physicians participating in the Medicaid program to maintain records and to furnish them upon request, as evidence of a clear intent to abrogate the physician-patient privilege in the case of the medical records sought in an investigation of fraudulent Medicaid practices. (56 NY2d, at p 255.) There is no similar statutory or regulatory record keeping and reporting requirement for the benefit of the Superintendent. Moreover, as the court in *Camperlengo* (*supra,* p 256) noted, "the use of information obtained pursuant to the record-keeping requirements is restricted to purposes directly connected with administering the Medicaid program, and disclosure is otherwise prohibited (US Code, tit 42, § 1396a, subd [a], par [7]; Social Services Law, §§ 136, 367-b, subd 4; § 369, subd 3)." No similar provision is present in the Insurance Law. Thus, even if a record-keeping and reporting requirement were to be read into the Insurance Law or the regulations of the Department of Insurance, the absence of a provision restricting the use of the privileged information and assuring its continued confidentiality would militate against the abrogation of the physician-patient privilege.

Upholding the assertion of the physician-patient privilege here serves a significant public interest. The privilege protects from needless embarrassment by disclosure of confidential communications those employees who, in the over four-year period for which their medical records are sought, were treated by petitioner. Disclosure of such information could have substantial adverse consequences upon a patient's willingness to seek treatment for a mental or emotional disorder. In the circumstances presented, where the Superintendent is already aware that claims have been made for treatment on dates the employees were at work and, indeed, on flights, the risk of embarrassment and invasion of privacy in permitting third parties to explore a psychiatric patient's treatment records far outweighs the benefit of any additional information which might be gained. Even a good-faith investigation does not permit the government "to embark upon any roving course

for the purpose of generally prying into the affairs of any person." (*Dunham v Ottinger,* 243 NY 423, 433; see, also, *Carlisle v Bennett,* 268 NY 212, 217; *Matter of Lefkowitz v Women's Pavilion,* 66 Misc 2d 743.)

Not all the information contained in the medical records may be privileged, however. Only that information which a physician "acquire[s] in attending a patient in a professional capacity, and * * * necessary to enable him to act in that capacity" is protected. (CPLR 4504, subd [a].) Thus, as already noted, a physician is not prohibited from testifying to the fact he has treated a patient and the occasions of his treatment. (*Klein v Prudential Ins. Co.,* 221 NY 449, 453, *supra; Patten v United Life & Acc. Ins. Assn.,* 133 NY 450, 453, *supra; Matter of Lee Mem. Hosp.,* 115 F Supp 643, 645-646, *supra.*) Hence, the employees' medical records, to the extent they reveal the dates and times of treatment, are not privileged and must be produced.

Since all of the records sought are otherwise protected either by the privilege against self incrimination or the statutory physician-patient privilege, the subpoena should be quashed to the extent it seeks the production of these documents, except for the dates and times of any treatment recorded in the employees' medical records. Petitioner's claim of privilege against self incrimination with respect to his own testimony is, however, premature. "[I]t is well settled that the privilege against self incrimination may not be asserted or claimed in advance of questions actually propounded" (*People v Laino,* 10 NY2d 161, 174). Thus, insofar as his own testimony is concerned, petitioner must, in the first instance, respond to the subpoena. Should he invoke the privilege at the time he is examined, the Superintendent would have the option of acquiescing in the claim of privilege subject to any challenge he might have to its assertion or compelling petitioner's testimony by conferring immunity upon him pursuant to section 25 of the Insurance Law, and CPL 50.20.

Accordingly, the judgment of the Supreme Court, New York County (Bradley, J.), entered July 23, 1983, denying petitioner's motion to quash a subpoena served upon him by the Superintendent of Insurance of the State of New York, should be modified, on the law, without costs or

disbursements, to grant said motion insofar as the subpoena sought the production of certain specified records except for the dates and times of any treatment recorded in the employees' medical records, and otherwise affirmed.

SANDLER, J. P., ROSS and KASSAL, JJ., concur.

Judgment, Supreme Court, New York County, entered on July 23, 1983, unanimously modified, on the law, without costs and without disbursements, to grant said motion insofar as the subpoena sought the production of certain specified records except for the dates and times of any treatment recorded in the employees' medical records, and otherwise affirmed.