JOYCE MENDELOWITZ, Individually and as Administratrix of the Estate of BERNARD MENDELOWITZ, Deceased, Appellant, v XEROX CORP., Respondent.

First Department, July 25, 1991

**APPEARANCES OF COUNSEL**

*Jordan C. Fox* of counsel *(Alan J. Konigsberg* with him on the brief; *Levy Phillips & Konigsberg,* attorneys), for appellant.

*Nicholas J. DiCarlo* of counsel *(Richard E. Donovan* with him on the brief; *Kelley Drye & Warren,* attorneys), for respondent.

## OPINION OF THE COURT

WALLACH, J.

Plaintiff's decedent was employed by various agencies of the United States Government from October 1955 to August 1978 as a "xerographer", a job that allegedly required him to stand over copying machines virtually all of his working hours. In October 1988, he was diagnosed as having mesothelioma, a type of lung cancer, from which he died in February 1989, three months after he started this action against Xerox Corporation, the manufacturer of the copying machines he allegedly operated; after his death, his wife, as administratrix of his estate, was substituted as plaintiff. According to the complaint, decedent's cancer was caused by his inhalation of asbestos dust emanating from components, particularly a "heat fuser", incorporated into the copying machines he operated; the complaint also alleges, insofar as pertinent, that "[a]t all relevant times, defendant knew or should have known that asbestos was deleterious to health, carcinogenic and posed a health hazard to consumers, users, and others exposed to it."

Plaintiff served a notice of discovery pursuant to CPLR 3120 demanding, in request number 7, "[c]opies of any books, articles or other medical information concerning the effects of asbestos exposure on human health and safety in the possession of the defendant prior to January 1, 1979", this date being shortly subsequent to decedent's retirement as a xerographer. While objecting to the request as "overbroad and unduly burdensome", defendant nevertheless volunteered that prior to January 1, 1979 it had maintained in its possession "standard reference material including, but not limited to, American Industrial Hygiene Association Journal, Patty's Industrial Hygiene and Toxicology, and Industrial Environment, its Evaluation and Control (OSHA)"; it then offered, in the good-faith discussions required by 22 NYCRR 202.7 (a), to respond to a request for "specifically identified books, articles or other medical information" in its possession prior to January 1, 1979. Plaintiff's attorney countered with an offer to withdraw the request if defendant allowed him access to the library it maintains at its corporate headquarters in Rochester, New York, so that he might personally search there for

any materials relating to the health effects of asbestos. This was rejected by defendant for unspecified reasons, and so the motion for a protective order was submitted. IAS vacated the request, characterizing it as "overly broad and vague".

Defendant asserts, albeit only through its attorney, that compliance with the request would require it "to comb through" and "literally review every book, periodical and reference material in its possession to ascertain whether any responsive materials existed"; such a "ferret[ing]" task, defendant further asserts, would require an enormous amount of employee time and "plainly constitute an undue burden". (Although not mentioned by defendant, perhaps note should also be taken of the unreasonable burden involved in making a copy of, say, a 1,000-page reference manual.) For his part, plaintiff's attorney stresses the importance of this information to the issues raised in the lawsuit; asserts "that every asbestos manufacturer has either by agreement or court order conducted a similar search"; further asserts that "thousands and thousands of documents, studies, articles and other literature" have been published on the health effects of asbestos; points out that he could not be expected to "divine" which of these were in defendant's possession prior to 1979; suggests that inasmuch as defendant is not in the business of mining or milling asbestos, "it is more likely than not" that the amount of literature it keeps on the subject is small; and argues, unrealistically, that defendant's offer to search for specifically identified books and articles "would require [it] to conduct essentially the same task * * * as required by the requests at issue", and thus would impose no less of a burden. In short, each party urges that the burden of specification should be on the other.

■ While it is not true, as it might once have been *(see, City of New York v Friedberg & Assocs.,* 62 AD2d 407, 410; *Harnett v Skandia Am. Reinsurance Corp.,* 60 AD2d 515; *Ganin v Janow,* 86 AD2d 857, 858), that the designation of documents by the use of such phrases as "all", "all other", or "any and all" necessarily and automatically renders a request for documents pursuant to CPLR 3120 improper *(see, Ensign Bank v Gerald Modell, Inc.,* 163 AD2d 149, citing *Stevens v Metropolitan Suburban Bus Auth.,* 117 AD2d 733, 734, in turn citing *Agricultural & Indus. Corp. v Chemical Bank,* 94 AD2d 671, and *Palmieri v Kilcourse,* 91 AD2d 657; *see also, Mestman v Ariens Co.,* 135 AD2d 516, 517, citing *Scheinfeld v Burlant,* 98 AD2d 603; *Matter of Bird,* 100 AD2d 784), it is true that the

use of such phrases continues to be viewed as at least "some indication of a lack of the requisite specificity" *(Stevens v Metropolitan Suburban Bus Auth., supra,* at 734), and is still frowned upon *(see, Agricultural & Indus. Corp. v Chemical Bank, supra,* 94 AD2d, at 672; *Dopf v United Airlines,* 135 AD2d 453; *Zimmerman v New York City Tr. Auth.,* 115 AD2d 738; *Nankof v ARA Servs.,* 96 AD2d 493). Exceptions have been found "in certain limited circumstances" where "the use of these phrases may relate to specific subject matter" and thus does not impede a ready identification of the particular thing(s) to be produced *(Matter of Bird, supra* [all Federal tax returns prepared for a trust over a five-year period]; *see also, e.g., Palmieri v Kilcourse, supra* [any and all medical records pertaining to the treatment of a particular patient by a particular doctor, which records were presumably maintained in a single file under the patient's name]; *Ensign Bank v Gerald Modell, Inc., supra* [all items of collateral held under specifically identified pawn tickets]; *but see, e.g., Craig v New York Tel. Co.,* 123 AD2d 580 [all investigation reports, internal memoranda and the like concerning the investigation into the causes of a fire "not otherwise privileged or protected", and copies of all rules and regulations concerning employee safety and protocol relating to fire safety for a two-year period, but *not* "all incident reports, memoranda and communications pertaining to the fire"]; *Scheinfeld v Burlant, supra* [any and all records, correspondence, memoranda and/or notes pertaining to the transactions in issue]). But in the main, the cases have been scrupulous in their adherence to the requirement of the statute that the notice specify the things sought with "reasonable particularity", and it is simply not open to challenge that the burden of specification is on the requesting party *(see,* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3120:4, at 597 [reasonable particularity means a description of the thing to be produced sufficient "to enable the adverse party to identify it readily"]; 3A Weinstein-Korn-Miller, NY Civ Prac, ¶ 3120.17 [unlike its Federal Rules of Civil Procedure rule 34 counterpart, CPLR 3120 does not explicitly authorize a designation of the things to be produced by "category"]; Siegel, NY Prac § 362, at 528 [2d ed] ["Asking for 'any and all' documents of a general description is usually unacceptable"]).

If one were to go to a law library and ask for a copy of McCormick, Evidence, cited in plaintiff's brief for the proposition that evidence of prior similar accidents is admissible for

the purpose of showing that a manufacturer had notice of hazards associated with its product, the librarian no doubt would get the book. If, on the other hand, one were to ask the same librarian for any and all books, articles or other legal literature making reference to the admissibility of other accidents in a products case, the librarian probably would not be so accommodating. The problem has not so much to do with the volume as with the cataloguing of the literature on a particular subject. If we knew for a fact that defendant's Rochester library maintains a card catalogue categorizing "Asbestos, health effects of", or even just "Asbestos", as a separate subject, perhaps we would consider directing defendant to supply a list of all of the books so categorized; we might even indulge in the assumption, absent proof to the contrary, that all such books published before January 1, 1979 were acquired by defendant before decedent's retirement. But the fact is that we do not know whether defendant maintains such a catalogue; indeed, we do not even know whether anyone anywhere else has undertaken to catalogue the literature on the health effects of asbestos.

Most fields of knowledge have recognized authorities. A lawyer concerned with a matter of New York practice would surely be aware of, and would probably consult, the Practice Commentaries in McKinney's Consolidated Laws of New York's Civil Practice Law and Rules, New York Civil Practice by Weinstein-Korn-Miller, and New York Practice by David D. Siegel. An on-point citation from any one of these works is usually enough to put a lawyer on notice, as it were, as to whether, and how far, that point has been accepted in authoritative legal circles. We know for a fact, by way of judicial notice, that asbestos dust is harmful to health; such is an accepted proposition in authoritative circles. What we do not know is when this proposition was first advanced, how much resistance it met, when it became settled and noncontroversial, and the identity of the experts who participated in creating and then reporting the consensus. But surely plaintiff's lawyer knows this, just as he knows of McKinney's Practice Commentaries, Weinstein-Korn-Miller, and Siegel, and we see no reason why he should not be content to begin his inquiry into defendant's knowledge concerning the hazards of asbestos by simply inquiring of it whether the works of any of the leading, consensus-creating and consensus-reporting authorities were contained in its library prior to 1979. Other avenues of inquiry suggest themselves as well and might be

successfully pursued, such as service of a notice pursuant to CPLR 3120 (a) (1) (ii) permitting inspection of defendant's Rochester library for a reasonable period under appropriate safeguards, and service of a notice pursuant to CPLR 3107 to take the deposition of defendant's Rochester librarian *(Rios v Donovan,* 21 AD2d 409).

A second request in plaintiff's notice of discovery, number 9, sought "Lists of any claims and lawsuits filed against the defendant by any * * * person[s] [other than its own employees] in which personal injuries or death as a result of asbestos exposure to defendant's copying equipment [was claimed], setting forth the name and address of each claimant [and] if a lawsuit the name of the Court, court number and status of the case." In its motion for a protective order, defendant argued that this request is improper in that it is not limited to claims and lawsuits involving the particular models of copiers allegedly operated by decedent, or at least models shown to be substantially similar (citing, *inter alia, D'Alessio v Nabisco, Inc.,* 123 AD2d 816; *Zimmerman v New York City Tr. Auth.,* 115 AD2d 738; *Petty v Riverbay Corp.,* 92 AD2d 525; *Ruggles v White Metal Rolling & Stamping Corp.,* 86 AD2d 847; *Matos v City of New York,* 78 AD2d 834; *Bertocci v Fiat Motors,* 76 AD2d 779; *Savitsky v General Motors Corp.,* 40 AD2d 1025). IAS agreed, stating that "[p]laintiff has not shown that other copier models are substantially similar to those utilized by decedent, or shown how information pertaining to other copiers would be relevant to this matter", and pruned the request to include only "copier models utilized by decedent".

■ Although defendant does not make a point of it, we think it pertinent that the request is more in the nature of an interrogatory than a demand for discovery. Plaintiff is not asking that any particular documents or other tangible things be produced; rather, as her lawyer made clear in opposing the protective order, what she seeks is a list of any claims or lawsuits brought against defendant for injury or death allegedly caused "by inhalation of asbestos dust from copying equipment manufactured, sold and distributed by Xerox from the period of time commencing with its earliest made copying equipment to date." While the reference in the notice to "claims" is indeed vague, and should therefore be disregarded, it is eminently reasonable to assume that if in fact any asbestos-related lawsuits have been brought against defendant, it maintains easily accessible files concerning such; and if, for some reason, defendant should not be able to supply a

list of such lawsuits that is exhaustive, it need only say so in a sworn statement.

We see absolutely no merit to defendant's argument that the list plaintiff seeks should be limited to lawsuits involving the same models of copiers allegedly operated by decedent, and completely agree with plaintiff that what makes these other lawsuits material and necessary and substantially similar to her own is the common allegation of exposure to a copying machine, whatever the model, that was manufactured by defendant with an asbestos-containing component. With respect, we think it disingenuous of defendant to suggest in the context of disclosure—without taking issue with plaintiff's assertion that there is no known safe level of exposure to asbestos dust, and without coming in with proof that any of its asbestos-containing models of copiers was specifically designed to abate the risk of asbestos exposure—that asbestos housed in other models presented less of a threat to health than the allegedly asbestos-containing models used by decedent. The weight to be given evidence of other injuries or deaths on the issues of notice and causation, and indeed the very admissibility of such evidence for whatever purpose plaintiff may want it introduced, are not of concern in the context of disclosure. At this juncture, the concern is with the usefulness and reasonableness of the list plaintiff asks defendant to compile in aiding preparation for trial *(Allen v Crowell-Collier Publ. Co.,* 21 NY2d 403, 406-407); with that in mind, we think the list should be supplied if only because it could be useful in facilitating communication among persons who have good reason to think of themselves as similarly situated.

A third request in plaintiff's notice of discovery, number 8, sought "A list of all health claims made by any workers of the defendant alleging adverse health effects as a result of asbestos exposure." Defendant argued successfully before IAS that this request is improper in that it is not limited to copying machines "and would even encompass claims made by workers alleging exposure to asbestos contained in, for example, building insulation." We agree—evidence of health claims made by defendant's employees that are not somehow connected with the manufacture of defendant's copying machines would not be useful in prosecuting the claim made in this lawsuit. However, rather than vacate the request in its entirety, as IAS did, we think it better to prune it to include only "a list of all health claims made by any workers of the defendant alleging adverse health effects as a result of expo-

sure to asbestos used in the manufacture of copying machines." We again emphasize that the disclosure of evidence, and its admissibility at trial, are completely separate matters.

Accordingly, the order of the Supreme Court, Bronx County (Hansel L. McGee, J.), entered March 23, 1990, which granted defendant's motion for a protective order to the extent of vacating plaintiff's requests number 7 and 8 and partially vacating so much of request number 9 as sought a list of claims and lawsuits filed against defendant alleging exposure to asbestos as a result of using models of defendant's copying machines other than the models allegedly used by decedent, should be modified, on the law, the facts and in the exercise of discretion, to partially reinstate request number 8 so as to limit it to a list of health claims made by defendant's employees alleging exposure to asbestos used in the manufacture of copying machines, and to reinstate request number 9 to the extent it seeks a list of lawsuits, and otherwise affirmed, without costs.

MURPHY, P. J., MILONAS, ELLERIN and KASSAL, JJ., concur.

Order, Supreme Court Bronx County, entered on March 23, 1990, unanimously modified, on the law, the facts and in the exercise of discretion, to partially reinstate request number 8 so as to limit it to a list of health claims made by defendant's employees alleging exposure to asbestos used in the manufacture of copying machines, and to reinstate request number 9 to the extent it seeks a list of lawsuits, and otherwise affirmed, without costs.