Marianne E. FLETCHER, Nancy L. Bartley, Raphael Paganelli and Charlotte Evans, Plaintiffs,

v.

ATEX, INC. and Eastman Kodak Company, Defendants.

Patricia L. O'CONNER, Stewart N. Kellerman, John D. O'Neil and Marcia A. Sherman, Plaintiffs,

v.

ATEX, INC., Defendant.

Nos. 92 Civ. 8758 (MEL), 92 Civ. 8759 (MEL).

United States District Court, S.D. New York.

May 24, 1994.

Steven J. Phillips, Levy, Phillips & Konigsberg, New York City, for plaintiffs.

Flor M. Ferrer-Colon, Nixon, Hargrave, Devans & Doyle, Rochester, Daniel J. Hurteau, Nixon, Hargrave, Devans & Doyle, Albany, for defendants.

### MEMORANDUM AND ORDER

DOLINGER, United States Magistrate Judge:

Plaintiffs in this product liability action allege that Atex, Inc. and its then-parent Eastman Kodak Company failed to warn them and their employers of the dangers of certain uses of computer keyboards manufactured by Atex. As a result, plaintiffs say that they now suffer from some form of repetitive stress injury, for which they seek compensation from both companies.

In the course of early pre-trial discovery, plaintiffs served document demands on Kodak that requested, *inter alia:*

> 12. All documents relating to defendant's first knowledge, notice or awareness about the alleged adverse effects of use of keyboards or related products.

> 13. All records relating to comments, complaints, suggestions, or proposals made by your employees by your customers, users, dealer[s], distributors or contractors or by yourself regarding the health effect of keyboards or related products.

(*See* March 31, 1994 letter to the Court from Daniel J. Hurteau, Esq., at p. 2.) After formal objection by defendant, the court ruled that these requests were proper and that Eastman Kodak should make a reasonable and good-faith search for responsive documents. (*Id.* at p. 3.) That search led to the production of some documents, but Eastman Kodak declined to produce 368 responsive documents on the basis of the New York physician-patient privilege. (*See* Oct. 18, 1993 letter to the Court from Steven J. Phillips, Esq., annexing "Schedule of Privileged Documents").

At the direction of the court (*see* Endorsed Order dated Oct. 22, 1993), defendant Eastman Kodak prepared two affidavits in support of its claim of privilege. (*See* Affidavits of Dr. James W. Mitchell, sworn to Nov. 4,

1993, and of Dr. Joseph L. Rea, sworn to Nov. 5, 1993.) These affidavits stated, in fairly broad and conclusory terms, that the withheld documents came from "employee medical files" (Mitchell Aff. at ¶ 4) and contained information compiled by doctors and nurses "while attending the employee in a professional capacity" (Rea Aff. at ¶ 9), and that the information was obtained "solely to enable the health care professional to treat the employee." (*Id.* at 10.) They further averred in equally general terms that it was "established medical department policy" to keep these records "confidential" (*id.* at ¶ 11), and that the employees "are assured that the information that they provide to the health care professionals will be used in confidence." (*Id.* at ¶ 12. *See also* Mitchell Aff. at ¶ 6.)

Following defendants' submission of these affidavits, the court authorized plaintiffs to take discovery directed to the representations in the affidavits. Plaintiffs conducted a number of depositions, and in their wake they seek an order directing production of the 368 withheld documents and a further search by Kodak for a variety of other, related corporate documents. Defendant resists these requests, and maintains that the documents are either irrelevant or privileged.

### ANALYSIS

I address relevance first, and then the issues raised by defendant's privilege claims and by plaintiffs' assertion that Kodak failed to conduct an adequate search.

#### A. *Relevance*

■ The documents in question apparently reflect communications concerning complaints of repetitive stress injuries suffered by Kodak employees who used keyboards, as well as Workers Compensation claims by Kodak employees who sought benefits on the basis of asserted keyboard-related stress injuries. Plaintiffs seek these documents, which date from as early as 1977, because they may well shed light on whether Kodak had notice that certain types of keyboard designs and uses might result in repetitive stress injuries. Such notice of potential dan-

ger is, of course, significant to plaintiffs' claim that Kodak had a duty to investigate and to warn purchasers of Atex keyboards. *See, e.g., George v. Celotex Corp.,* 914 F.2d 26, 29 (2d Cir.1990).[1]

In arguing against their relevance, defendants' attorney asserts, without further explanation, that these documented complaints involved different keyboards from the ones utilized by plaintiffs, and that the Kodak employees presumably had different jobs from plaintiffs—plaintiffs worked for news publications—as well as different medical histories and other unspecified differing personal characteristics. (*See* Hurteau letter at pp. 2–3.) This argument is meritless.

 The breadth of relevance, as defined for discovery purposes by Fed.R.Civ.P. 26(b)(1), has been frequently noted. *See, e.g., Daval Steel Prods. v. M/V Fakredine,* 951 F.2d 1357, 1367 (2d Cir.1991); *In re Bairnco Corp. Sec. Litig.,* 148 F.R.D. 91, 96 (S.D.N.Y.1993); *Martin v. Valley Nat'l Bank,* 140 F.R.D. 291, 300 (S.D.N.Y.1991). It is a liberal standard which encompasses any information that "appears reasonably calculated to lead to the discovery of admissible evidence." *See, e.g., United States v. Kross,* 14 F.3d 751, 754 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 99, —— L.Ed.2d —— (1994); *Daval Steel Prods. v. M/V Fakredine,* 951 F.2d at 1367; *Torres v. City University of New York,* 1992 WL 380561, at *3 (S.D.N.Y. Dec. 3, 1992). To assess relevance in a given case, the court must view the matter in light of the specific claims and defenses asserted by the parties. *See, e.g., In re Bairnco Corp. Sec. Litig.,* 148 F.R.D. at 96; *Martin v. Valley Nat'l Bank,* 140 F.R.D. at 300. *See also Planned Parenthood Fed'n v. Heckler,* 101 F.R.D. 342, 344 (D.D.C.1984) (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389–90, 57 L.Ed.2d 253 (1978)); *United*

*States v. IBM Corp.,* 66 F.R.D. 180, 182 (S.D.N.Y.1974).

In this case, as noted, a central issue presented by plaintiffs' claim of failure to warn is the extent of the prior notice to defendants of the potential dangers of the Atex keyboards. For "notice" purposes, relevance is broadly defined. Indeed, even for purposes of admissibility at trial, evidence of prior incidents need not fit precisely the pattern of events alleged in the complaint. As observed by Judge Weinstein, "if the accident is offered to prove notice, a lack of exact similarity of conditions will not cause exclusion provided the accident was of a kind which should have served to warn the defendant." 1 J. Weinstein *et ano., Weinstein's Evidence* ¶ 401[10] at 401–67 (1992). *Accord, Joy v. Bell Helicopter Textron, Inc.,* 999 F.2d 549, 555 (D.C.Cir.1993); *Ponder v. Warren Tool Corp.,* 834 F.2d 1553, 1560 (10th Cir.1987). *See also In re Carey,* 929 F.2d 1229, 1235 n. 2 (7th Cir.1991) (citing cases); *Mendelowitz v. Xerox Corp.,* 169 A.D.2d 300, 307, 573 N.Y.S.2d 548, 552 (1st Dep't 1991).

Since we are addressing discovery and not admissibility at trial, the required similarity between incidents may be still more attenuated. In this case, the fact that keyboards in use at Kodak may have caused repetitive stress injuries is potentially highly relevant since it may well turn out that the keyboards were similar to ones used by plaintiffs. In any event, the fact that such injuries may have been severe and widespread could well lead a trier of fact to conclude that Kodak and/or Atex was on notice of the potential for injury through this mechanism and should have more carefully determined whether warnings to consumers were necessary. *See generally Ponder v. Warren Tool Corp.,* 834 F.2d at 1560 (once the district court concludes at trial that reoccurring accidents are substantially similar, any differences in circumstances goes merely to the weight given to the evidence); *Exum v. General Elec. Co.,* 819 F.2d 1158, 1163 (D.C.Cir.1987) (evidence of substantially similar accidents should have

---

**1.** It bears noting that Kodak has a currently pending motion for summary judgment, premised principally on the theory that it cannot be responsible for the actions of Atex, its wholly-owned subsidiary, in designing and selling keyboards. Even if this motion were granted, however, the analysis would not significantly change

since Kodak performed sophisticated ergonomic studies that were apparently utilized by Atex. *See Harrigan v. Electronic Pre-Press Sys., Inc.,* 1992 WL 121438, at *1–2 (S.D.N.Y. May 15, 1992). Hence any pertinent information developed by Kodak could be relevant to the question of notice by Atex.

been admitted even though the accidents were not identical); *Reed v. Tiffin Motor Homes, Inc.*, 697 F.2d 1192, 1199 (4th Cir. 1982) (applying Rule 401 to uphold admissibility at trial of crash photos of vehicles other than the type involved in the accident).

Not surprisingly, the courts that have addressed this question in the context of repetitive stress injury claims have, with regularity, upheld the relevance of these types of inquiries. *See Evans v. Visual Technology, Inc.*, 1994 WL 28002, at *4 & n. 3 (N.D.N.Y. Jan. 27, 1994); *Schneck v. IBM Corp.*, Memorandum & Order at 10–11 (D.N.J. July 26, 1993); *Miller v. Computer Machinery Corp.*, Discovery Order at 3–5 (D.N.J. June 1, 1993); *see also Bergstrom v. IBM, Inc.*, Order at 3 (Cal.Super.Ct.Ala.Cty. Dec. 6, 1993).² I concur with these decisions and find the requested documents well within the bounds of relevance for discovery purposes.

## B. *The Privilege Issue*

■ In further resisting disclosure, defendant Kodak invokes the New York State statutory physician-patient privilege. Based on a review of the record, I conclude that Kodak has failed to meet its burden under New York law.

■ We start by noting "that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." *von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir.), *cert. denied*, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987); *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 234–35 (2d Cir.1984). More broadly, the proponent of a privilege must establish not merely the privileged relationship, but all essential elements of the privilege. *See, e.g., In re Horowitz*, 482 F.2d 72, 82 (2d Cir.), *cert. denied*, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 *reh. denied*, 414 U.S. 1052, 94 S.Ct. 556, 38 L.Ed.2d 340 (1973); *United States v. Kovel*, 296 F.2d 918, 923 (2d Cir.1961); *Bowne of New York City, Inc. v.*

*AmBase Corp.*, 150 F.R.D. 465, 470 (S.D.N.Y. 1993). *See also United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir.1989); *People v. Osorio*, 75 N.Y.2d 80, 84, 550 N.Y.S.2d 612, 614, 549 N.E.2d 1183, 1185 (1989); *People v. Mitchell*, 58 N.Y.2d 368, 373, 461 N.Y.S.2d 267, 270, 448 N.E.2d 121, 123–25 (1983). This burden can be met only by an evidentiary showing based on competent evidence, *see, e.g., von Bulow v. von Bulow*, 811 F.2d at 144; *Blum v. Schlegel*, 150 F.R.D. 42, 45 (W.D.N.Y.1993), and cannot be "discharged by mere conclusory or ipse dixit assertions." *von Bulow v. von Bulow*, 811 F.2d at 146 (quoting *In re Bonanno*, 344 F.2d 830, 833 (2d Cir.1965)); *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d at 224–25; *Redvanly v. Nynex Corp.*, 152 F.R.D. 460, 465 (S.D.N.Y.1993); *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. at 470.

■ In this case, the claims and defenses arise exclusively under state law. Accordingly, as defendants note, under Fed.R.Evid. 501 we look to state law for guidance as to the substance of the privilege. *See, e.g., In re American Tobacco Co.*, 880 F.2d 1520, 1527 (2d Cir.1989); *Dixon v. 80 Pine St. Corp.*, 516 F.2d 1278, 1280 (2d Cir.1975); *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. at 470. Although the choice of which state's law to apply could depend upon where the doctor-patient relationship was created, *see, e.g., Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. at 520; *Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 521 (S.D.N.Y.1992) (citing cases), the parties have assumed the applicability of New York law, presumably because most or all of the employees' records were created in this state. *See, e.g., Doe v. Roe*, 190 A.D.2d 463, 469–70, 599 N.Y.S.2d 350, 352–53 (4th Dep't), *appeal dismissed*, 82 N.Y.2d 846, 606 N.Y.S.2d 597, 627 N.E.2d 519 (1993) (New York privilege law controls if relationship was entered into in New York). I accordingly adhere to that presumptively correct choice of law. *See, e.g.,*

---

2. I note that the one case cited by Kodak for its assertion of irrelevance involved decidedly different facts. In *Bost–Manuel v. Unisys Corp.*, 1994 WL 87529 (N.Y.Sup.Ct., Jan. 31, 1994), the plaintiff was a postal worker who used a letter sorting machine. (*Id.* at *3.) Not surprisingly, the court found that inquiries as to injuries suffered by employees who operated computer keyboards would not yield probative information.

**50**

*Mentor Ins. Co. (U.K.) Ltd. v. Brannkasse*, 996 F.2d 506, 513 (2d Cir.1993); *Cargill, Inc. v. Charles Kowsky Resources, Inc.*, 949 F.2d 51, 55 (2d Cir.1991); *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 137 (2d Cir.1991); *Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 52 (2d Cir.1984).

The applicable New York statutory provision is C.P.L.R. § 4504(a), which provides in relevant part:

> Unless the patient waives the privilege, a person authorized to practice medicine, registered professional nursing [or] licensed practical nursing ... shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity.

It is defendant's burden to demonstrate that the withheld documents contain solely information that was acquired by doctors or nurses in their professional capacity to treat the Kodak employees, and that this information was necessary for diagnosis or treatment. *See, e.g., Henry v. Lewis*, 102 A.D.2d 430, 432, 478 N.Y.S.2d 263, 266 (1st Dep't 1984) (citing *People v. Decina*, 2 N.Y.2d 133, 141–43, 157 N.Y.S.2d 558, 566–67, 138 N.E.2d 799, 804–05 (1956)). *See also State of New York v. General Elec. Co.*, 201 A.D.2d 802, 803, 607 N.Y.S.2d 181, 182 (3d Dep't 1994); *Rubin v. Alamo Rent–A–Car*, 190 A.D.2d 661, 662, 593 N.Y.S.2d 284, 285 (2d Dep't 1993). Moreover, although defendant seems to imply otherwise (*see* Hurteau letter at pp. 11–12), it is also Kodak's burden to demonstrate that the information was provided with the understanding that it would be treated confidentially. *See, e.g.,* C.P.L.R. § 4504, Vincent C. Alexander, *Practice Commentaries* C4504:2(d), at 631 (McKinney's 1992); *People v. Decina*, 2 N.Y.2d at 145, 157 N.Y.S.2d at 569, 138 N.E.2d at 806–07; *Farrow v. Allen*, 194 A.D.2d 40, 43, 608 N.Y.S.2d 1, 2 (1st Dep't 1993); *State of New York v. General*

*Elec. Co.*, 201 A.D.2d at 802–03, 607 N.Y.S.2d at 182; *O'Connor v. West*, 147 A.D.2d 959, 538 N.Y.S.2d 740 (4th Dep't 1989); *Desai v. Blue Shield*, 146 A.D.2d 264, 266, 540 N.Y.S.2d 569, 570 (3d Dep't 1989).

Based on the testimony adduced at the various depositions of Kodak's medical personnel, I conclude that Kodak has sufficiently demonstrated that the Illness/Injury Reports listed on the privilege log were created by medical professionals, most employed by Kodak in its Medical Department,[3] and reflect information obtained to facilitate treatment of the patient. It is not entirely clear whether these records also include information that is not "necessary to enable [the medical professional] to act in" his professional capacity. C.P.L.R. § 4504(a). *See generally Rubin v. Alamo Rent–A–Car*, 190 A.D.2d at 662, 593 N.Y.S.2d at 285; *Henry v. Lewis*, 102 A.D.2d at 232, 478 N.Y.S.2d at 266–67. Most notably, Kodak medical personnel often discuss the employee's medical problem, if work-related, with the employee's supervisor, and may record that conversation on the form. (*See* Mitchell Tr. at 73–74, 159; Sweeney Tr. at 44–45.) Nonetheless, for present purposes we will assume that the reports contain only medical information. Even given this assumption, however, defendant does not justify withholding the Kodak Illness/Injury Reports.

First, even if we assumed that defendants could meet the statutory criteria for invoking the privilege, the Second Circuit has held that state law requires only concealment of the patient's identity, not a withholding of the medical records. *See In re American Tobacco Co.*, 880 F.2d at 1530–31 (citing *Hyman v. Jewish Chronic Disease Hospital*, 15 N.Y.2d 317, 322, 258 N.Y.S.2d 397, 399, 206 N.E.2d 338, 339 (1965)). *See also Lora v. Board of Educ.*, 74 F.R.D. 565, 579–83 (E.D.N.Y.1977). Thus, in any event production of the reports may be required, with names and other identifying information redacted.[4]

---

3. Some of the documents were apparently reports or summaries prepared by outside physicians treating Kodak employees. (*See* Rea Aff. at ¶ 3.)

4. In addressing this issue, defendants argue only that production in redacted form should not be ordered since plaintiffs have shown no need for the documents (Hurteau letter at 17–18 (citing *Lora v. Board of Educ. of City of New York*, 74

Second, defendants have not demonstrated the requisite confidentiality because the information provided by the Kodak employee is routinely communicated by the Kodak Medical Department to non-medical individuals for various purposes other than diagnosis and treatment, and the employee-patients are aware of this practice.[5] *See, e.g., State of New York v. General Elec. Co.*, 201 A.D.2d at 802–03, 607 N.Y.S.2d at 182–83.

As testified to by Dr. Mitchell and Nurse Sweeney, if the employee reports a medical problem that is occupationally related, the medical person often calls the employee's supervisor or department manager to discuss the conditions and its causes. (Mitchell Tr. at 70–71; Sweeney Tr. at 59.) In these discussions, medical personnel disclose the employee's complaints and discuss them in relation to work-site conditions. (Mitchell Tr. at 71; Rea Tr. at 111–12, 142–44.) If the medical person believes that an ergonomic evaluation of the employee's work station is needed, he or she will call Kodak's Human Factors Laboratory, and will disclose information about the employee's symptoms and conditions. (Sweeney Tr. at 57–60; Mitchell Tr. at 159–60.)

This practice of disclosure is apparently not a surprise to Kodak employees. Indeed, notwithstanding a generally stated policy of confidentiality of medical consultations (*see* Rea Aff. at ¶¶ 8, 11–13; Mitchell Aff. at ¶ 6; Hurteau letter at Exh. A), medical personnel advise Kodak employees of the intended disclosure to other departments. (Rea Tr. at 155–56.) *See, e.g., State of New York v. General Elec. Co.*, 201 A.D.2d at 802–03, 607 N.Y.S.2d at 182–83.

In addition to these types of disclosures, the medical information is disclosed in a variety of other formats. Thus, the Medical Department prepares the so-called OSHA 101 report, which includes personal identifying information, diagnoses, and the details of any injury and outcome (Rea Tr. at 111–12; Mitchell Tr. at 151), and transmits the form to the Safety Department. (Mitchell Tr. at 154–55.) Similarly, medical evaluations are incorporated in a Corporate Occupational Incident Report. The form is initially filled out by the employee and his supervisor for all occupationally-related injuries. (Rea Tr. 101; Mitchell Tr. at 38, 139–50; Baysinger Tr. at 107; Sweeney Tr. at 37; March 4, 1994 letter to the Court from Ivan B. Rubin, Esq., at

F.R.D. at 583)), and that if redacted production is ordered, plaintiff should bear the costs of redaction. (*Id.* at 18 (citing *Rubin v. Alamo Rent–A–Car*, 190 A.D.2d at 662, 593 N.Y.S.2d at 286).) Neither point is persuasive. As noted, plaintiffs have shown a need for the materials. Moreover, the invocation of *Lora* is misleading, since the court there upheld production of records, and did not suggest that redacted documents could be withheld unless the discovering party showed a particularly compelling need, above and beyond the normal standard of relevance under Rule 26(b)(1). Moreover, the decision in *Lora* predated *American Tobacco*, which squarely held that under New York law redaction fully disposed of any privilege-based objections.

As for expenses of redaction, it is not at all clear that *Rubin* stands for the proposition that the cost of redaction—rather than of copying—may be imposed on the discovering party. Indeed, the cited proposition quoted by the Second Department is that " '[E]ach party should shoulder the initial burden of financing his own suit, and based on such a principle, it is the party seeking discovery of documents who should pay the cost of their [reproduction].' " *Rubin v. Alamo Rent–A–Car*, 190 A.D.2d at 663, 593 N.Y.S.2d at 286 (quoting *Rosado v. Mercedes–Benz of North Amer., Inc.*, 103 A.D.2d 395, 398, 480 N.Y.S.2d 124, 126 (2d Dep't 1984)). Moreover,

the logic of defendant's argument would result in requiring the discovering party in virtually all cases to compensate its adversary for all costs of document production, such as the hourly fee paid to paralegals to locate documents. This is plainly not the law either in federal or in state court. *See, e.g., Hinton v. Geary*, 1984 WL 759, at *5 (S.D.N.Y. Aug. 13, 1984); *First Nat'l City Bank v. State of New York*, 72 A.D.2d 762, 763, 421 N.Y.S.2d 381, 382–83 (2d Dep't 1979). *Cf. Krause v. Rhodes*, 535 F.Supp. 338, 350–51 & n. 15 (N.D.Ohio 1979), *aff'd*, 671 F.2d 212 (6th Cir.), *cert. denied*, 459 U.S. 823 [103 S.Ct. 54, 74 L.Ed.2d 59] (1982). *See generally In re Puerto Rico Elec. Power Auth.*, 687 F.2d 501, 507 (1st Cir.1982) ("It is generally assumed, as the Supreme Court stated in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 [94 S.Ct. 2140, 40 L.Ed.2d 732] (1974) that each party is to bear the 'ordinary burden of financing [its] own suit.' *Id.* at 179 [94 S.Ct. at 2153]"); *Cook v. Volkswagen of America, Inc.*, 101 F.R.D. 92, 92 & n. 1 (S.D.W.Va. 1984).

5. Defendants' analysis focusses on whether the employees have waived the privilege. (*See* Hurteau letter at 13–15.) The relevant question, however, is whether the information was ever privileged, not whether the privilege has been waived.

Exh. G.) Additional information is then added by the Medical Department, which may also modify the supervisor's characterization of the "causal" relationship of the work to the injury. (Mitchell Tr. 139–50.) The form is then filed with the Safety Department. (Mitchell Tr. at 136–37, 139–50.)

In the case of occupationally-related injuries, the medical professional may also prepare a so-called Work Prescription to advise the supervisor to change working conditions to alleviate the diagnosed condition. (Rea Tr. 145–46; Mitchell Tr. at 132.) This form is sent to the supervisor, who returns the form with a notice that the changes have been made. (Rea Tr. at 145–46.)

Much of the information derived from the medical consultation is also entered in the Corporate Accident Information Retrieval System ("CAIRS"), both by the Medical Department and by the Safety Department. (Rea Tr. at 105; Mitchell Tr. at 136.) The medical information placed in the CAIRS data base is accessible to personnel in the Safety Department. (Mitchell Tr. at 135–36.)

Finally, if the injury suffered by the employee is subject to reporting to OSHA, as are all cumulative trauma complaints, it is recorded in an OSHA log kept by the Safety Department. (*See* Mitchell Tr. at 70; Rea Tr. at 52–53.) This information is then provided not only to OSHA, but also to New York State Worker's Compensation. (Mitchell Tr. at 151–52; Rea Tr. at 152, 155; Baysinger Tr. at 96.)

■ Since the state and federal governments mandate that some of the medical information must be kept, and ultimately disclosed to government authorities, it appears that such data is not protected by the requisite expectation of confidentiality, thus precluding invocation of the privilege under New York law. *See, e.g., Smith v. International Paper Co.,* 142 A.D.2d 858, 860, 531 N.Y.S.2d 58, 59 (3d Dep't 1988) (noting medical records kept in the regular course of business under 29 C.F.R. § 1904.2(A) were not protected). *Accord, State of New York v. General Elec. Co.,* 201 A.D.2d at 802–03, 607 N.Y.S.2d at 182.[6] Moreover, all of the basic medical information is apparently routinely disclosed outside the Medical Department, and even though such disclosure is largely for the benefit of the employee, that reporting system apparently fatally compromises any claim to confidentiality. *See id.* at 802–03, 607 N.Y.S.2d at 182–83 (in rejecting privilege, court cites the fact that "this medical information was shared with defendant's management personnel to enable them to determine an employee's specific need to be removed from exposure to various chemicals used in the manufacturing process.").[7]

A final consideration undermining the asserted expectation of confidentiality in the medical reports is that the official Kodak policy with regard to responding to nonparty subpoenas gives no indication that Kodak would resist production of medical records. Quite to the contrary, the written policy, which was apparently made known to employees, states only that Kodak would notify the employee of the subpoena before complying, thus presumably permitting the employee to attempt to assert a privilege. (*See* March 4, 1991 letter to the Court from

---

**6.** In assessing the state of New York law, we must give presumptive deference to clear statements of the law by intermediate state courts. *See, e.g., West v. American Tel. & Tel. Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183–84, 85 L.Ed. 139 (1940); *Pentech Int'l, Inc. v. Wall Street Clearing Co.,* 983 F.2d 441, 445–46 (2d Cir.1993); *Deeper Life Christian Fellowship, Inc. v. Sobol,* 948 F.2d 79, 84 (2d Cir.1991). In this case, there is no reason to question the validity of the state court decisions cited in the text.

**7.** It bears noting that the court in *General Electric* also observed that the medical data had been used in a series of scientific studies, and that GE had not produced evidence indicating that the employees expected confidentiality for the medical reports. *Id.,* 201 A.D.2d at 802–03, 607 N.Y.S.2d at 183. From the court's opinion we cannot assess the relative weight given to these various points by the court, but a fair reading indicates that the court viewed the communication of medical data to corporate management as inconsistent with a claim of confidentiality, and that this fact would therefore be dispositive absent proof that the employees had been assured that no such disclosure would take place. As in that case, Kodak does not suggest that the dissemination of medical information within the company or to government agencies was in any sense contrary to representations made to Kodak employees.

Ivan B. Rubin, Esq., at Exh. F–1.) In contrast, the policy indicates that for other categories of information Kodak would resist production on its own initiative absent employee authorization. (*See id.*, Exhs. F–1 & F–2 at §§ 2.0, 2.1.)

In sum, Kodak has failed to sustain its burden to demonstrate that the Corporate Illness/Injury Reports and other Kodak-generated documents listed on the privilege log are protected by the physician-patent privilege. Hence they must be produced in unredacted form.

The only documents on the log that plaintiffs concede are privileged are reports by private treating physicians. (*See* April 19, 1994 letter to the Court from Ivan B. Rubin, Esq., at p. 21, ¶ 2.) As noted, the privilege requires only deletion of patient-identifying information, and hence these documents must be produced in redacted form.

## C. *Adequacy of the Document Search*

 Kodak has described its document search procedure, which resulted in the segregation of the documents listed on the privilege log as well as other documents already produced to plaintiffs. (*See* Affidavit of LuAnne Cenci, sworn to March 30, 1994, at Exh. E to Hurteau letter.) Plaintiffs note the efforts made, but argue that defendant can, and should be required to, make additional searches to obtain and produce several categories of documents.

Plaintiffs first address the Corporate Incident Reports, which are retrievable by the employee's identification number. (Cenci Aff. at ¶ 8.) Kodak's paralegal, Ms. Cenci, who was responsible for the document search, obtained the identification numbers for all employees whose injury reports are listed on the privilege log (*id.* at ¶ 7), and hence it appears that the Corporate Incident Reports are retrievable. In this regard, Ms. Cenci indicates that the reports have been included on the CAIRS data base. (*Id.* at ¶ 8.) Since the reports are plainly relevant to the question of notice, they must be produced for the employees whose injury reports are on the Privilege Log. If, as indi-

cated, they are on a computerized data base, they can be produced in that format for greater efficiency.

Plaintiffs also appear to seek a broader universe of Corporate Incident Reports. Thus, they ask for all such reports that bear item codes 3600 or 3610, which they say indicate injuries "due to the use of office machinery and more specifically, personal computers." (April 19, 1994 Rubin letter at p. 10) (emphasis omitted). If, as appears to be the case, the Corporate Incident Reports can be retrieved from the CAIRS database by item code, such production, if limited to repetitive stress injuries from the use of keyboards, would be appropriate. It is not clear, however—since plaintiffs raised this specific matter only in their reply letter brief—whether the Privilege Log already encompasses all keyboard-related stress injury reports.[8] This ambiguity may be resolved by requiring Kodak to produce the specified universe of computer-based Corporate Incident Reports or to supply to plaintiffs' counsel an affidavit establishing that all keyboard-related stress injury reports have been accounted for and produced.

Additional categories of relevant documents have either not been searched for or else not produced. These include Worker's Compensation Reports, the OSHA 101 reports and the OSHA 200 log, insofar as they involve claims of keyboard-related repetitive stress injuries. (*Id.* at pp. 13–15.) In addition plaintiffs seek Work Prescription forms and specified CAIRS computer manuals. (*Id.* at p. 15.)

The Workers Compensation Reports are apparently included on a data base, and indeed Ms. Cenci apparently reviewed the pertinent ones in conducting her search. (*See* Cenci Aff. at ¶ 12.) Thus, they are obviously accessible, and since they are relevant to notice (*see, e.g.*, Exh. L to April 19, 1994 Rubin letter) (employee attributes upper extremity injury to keyboard), they must be produced.

The OSHA 101 reports are plainly relevant. Indeed, they require the employee to state how the listed accident or illness oc-

---

8. Ms. Cenci's affidavit is not clear on this matter.

curred. Moreover, Kodak makes no effort to suggest that production of these reports for repetitive stress injuries attributable to keyboard use would in any respect be burdensome. Accordingly, they must be produced.

The so-called OSHA 200 forms are also referred to as the OSHA logs. These forms are plainly of relevance since they may reflect specific references to keyboard causation.[9] In resisting production, Kodak suggests that it would be burdensome, although its representation on this point is extremely vague, consisting solely of the assertion that "[t]o conduct manual searches of the Corporate Incident Reports and OSHA logs could consume months of Eastman Kodak Company employee time and effort." (Cenci Aff. at ¶ 11.)

█ If a party resists production on the basis of claimed undue burden, it must establish the factual basis for the assertion through competent evidence. *See, e.g., In re "Agent Orange" Prod. Liability Litig.,* 821 F.2d 139, 145 (2d Cir.), *cert. denied sub nom. Dow Chemical v. Ryan,* 484 U.S. 953, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987); *Solarex Corp. v. Arco Solar, Inc.,* 121 F.R.D. 163, 169 (E.D.N.Y.1988), *aff'd,* 870 F.2d 642 (Fed.Cir. 1989); *National Lawyers Guild v. Attorney General,* 94 F.R.D. 600, 612 (S.D.N.Y.1982). *See generally Chichilnisky v. Trustees of Columbia Univ.,* 1994 WL 88247, at *2–3 (S.D.N.Y. Mar. 17, 1994). Plainly defendants have not done so in this instance. Indeed, it is not clear how these logs are kept, whether they are on a computer database, and what procedures would have to be followed in locating responsive entries. It is also unclear whether the logs in fact contain indications of causation—which would make them potentially significant—notwithstanding Ms. Cenci's vague suggestion that they do not.

Accordingly, defendants are to produce the OSHA logs unless, within two weeks, they supply one or more affidavits setting forth with specificity the procedures that would be required to segregate and produce the logs. In that case, plaintiffs may supply responding papers within one week thereafter.

Plaintiffs also seek court intervention with regard to the Work Prescription forms. There is unresolved confusion on this matter since Dr. Rea testified that he saw several such forms in the medical files that he reviewed and transmitted to the Legal Department (Rea Tr. at 177), whereas Ms. Cenci denies having seen any such forms. (Cenci Aff. at ¶ 15.) Defendants must clarify this inconsistency and produce all relevant Work Prescriptions.

Plaintiffs also are entitled to the computer manuals relating the CAIRS and Workers Compensation databases. These items were requested by plaintiffs and are relevant to an assessment of the data contained on these computer databases.

There remain two items. First, although the bulk of the clinical logs and notes may be protected by the physician-patent privilege, it appears that some contain accounts of conversations between medical and non-medical personnel. (Mitchell Tr. at 159–61.) These items would not be protected by the statutory privilege and are thus properly ordered produced.

█ Second, plaintiffs complain generally that Kodak failed to make sufficiently complete searches of its Medical Department. Specifically, they seek a direction that Kodak be required to search not only medical files in its medical department worldwide, but also correspondence and other individual files, as well as so-called "area" files. (*See* April 19, 1994 Rubin letter at p. 12.) On the current record there is not a sufficient basis to justify imposing such a burden on defendant. Ordinarily we indulge the assumption—absent evidence to the contrary—that a corporate party best knows the locations in which relevant documents are likely to be found. It is a rare case in which a litigant will be required to go through the proverbial haystack in search of a possible needle.

Here it is evident that significant documentation on the notice issue is readily available, and defendant is being required to pro-

---

9. Ms. Cenci states that it is her understanding that the forms do not contain such data. (Cenci Aff. at ¶ 9.) Her affidavit does not indicate whether she reviewed the documents to make this conclusion, and plaintiffs' counsel represents

that these forms, when produced by another employer in a related lawsuit, contained this very type of information. (April 19, 1994 Rubin letter at pp. 14–15.)

duce it. Plaintiffs fail, however, to demonstrate that the type of further search that they are seeking to impose will likely unearth a substantial body of relevant information, and the court declines to direct an obviously burdensome search on pure speculation. Plaintiffs are of course free to depose individuals knowledgeable about Kodak's filing systems in an effort to demonstrate either the likelihood that valuable information is buried in the files that they wish searched, or that an effort would not be particularity burdensome. Absent such a showing, the court declines to direct a further search.

## CONCLUSION

For the reasons stated, plaintiffs' application to compel discovery is granted to the extent indicated. The parties are to consult promptly in an effort to agree upon a schedule for production. If they cannot agree, they are to submit proposed orders by May 31, 1994.

**SO ORDERED.**