JAMES M. POWER et al., Appellants, v CROWN EQUIPMENT CORPORATION, Respondent, and Third-Party Plaintiff, et al., Third-Party Defendant.

First Department, April 8, 1993

APPEARANCES OF COUNSEL

*Ignatius John Melito* of counsel, New York City *(Siff Rosen* and *Nancy S. Goodman* with him on the brief; *Barton & Zasky,* attorneys), for appellants.

*J. Joseph Bainton* of counsel, New York City *(Andrew H. Beatty* with him on the brief; *Whitman & Ransom,* attorneys), for respondent.

## OPINION OF THE COURT

KASSAL, J.

This is a personal injury action brought by plaintiff James M. Power and his wife, Roseann Power, to recover damages stemming from injuries he sustained when a forklift, manufactured by defendant, Crown Equipment Corporation (Crown), which plaintiff was operating, tipped over. Plaintiff, who sustained several fractured vertebrae in his neck, a fractured right scapula, nine fractured ribs, collapsed lungs, and injuries to his head and right eye, has permanent spinal and neuromuscular damage. Despite several operations and long periods of physical therapy, plaintiff suffers from quadriparesis, a condition that causes numbness, weakness and spasticity in all of his four limbs. In addition, plaintiff continues to experience pain, difficulty in breathing, and severe headaches.

The accident occurred on May 21, 1988, when plaintiff, then a 25-year-old technician, jumped from the forklift as it began to tip over, but failed to jump clear of the truck, and the forklift's overhead guard came down on his neck. The forklift had been delivered to plaintiff's employer, third-party defendant, Manhattan Cable Television, Inc. (Manhattan Cable) on April 27, 1988.

At issue on appeal is whether the trial court properly excluded from evidence the fact that Crown had determined in 1987 that it was safer for operators of its forklifts to stay with the lift in the event of a tipover, specifically because the

overhead guard had a tendency to strike an operator attempting to jump clear of it. Because of this problem, Crown had determined that a warning decal should be included on all of its forklifts, directing operators not to jump in the event of a tipover. However, Crown had failed to affix any such decal on the forklifts delivered to Manhattan Cable nearly a year later, in April 1988. Instead, Crown began providing the warning decal on forklifts manufactured in May 1988, shortly after plaintiff's May 21, 1988 accident. In addition, the warning labels were not mailed to prior purchasers, and no other form of notification, which could have prevented the type of accident which occurred herein, was provided.

At trial, plaintiff's expert testified that the dangers associated with forklift operators jumping from the machinery during tipovers were known in the industry since the mid-1950's, and that decals advising operators to stay with the equipment in such circumstances had been used by other manufacturers since 1986. The expert further testified that defendant failed to adequately warn of the dangers, and that the injuries sustained by plaintiff could have been prevented had the appropriate warning decal been provided. Defendant's expert testified that there was no obligation to provide decals at the time of the manufacture of the subject forklift, and that there were certain situations in which it would be safer to jump from the forklift. In addition, defendant's manager of product engineering testified that there was no need for a warning decal in February 1988, when this machine was manufactured, because the risk of tipover was minimal, and because it was not clear that jumping would be unsafe.

On the basis of the testimony by defendant's vice-president in charge of engineering and product development, to the effect that he was aware, as early as 1970, of the possibility of injuries from jumping off of falling forklifts, that prior incidents and serious injuries had occurred in this manner, and that the implementation of the decal had been considered in 1987, plaintiff sought to offer evidence that defendant knew that a warning decal was necessary prior to the manufacture of this forklift, but had waited approximately nine months to one year before supplying the decal in May 1988. Plaintiff also sought to use the evidence in cross-examining defendant's manager of product engineering, on the issue of defendant's continuing duty to warn.

In excluding evidence of the decal, the IAS Court held that it solely related to postmanufacture modifications of the fork-

lift. The jury returned a verdict in favor of defendant, finding that no breach of duty to warn had occurred.

On appeal, plaintiff urges that it was reversible error for the court to have refused to admit evidence establishing that, almost one year before the manufacture of the subject forklift, defendant had determined that a warning decal was necessary. Plaintiff further urges that it was reversible error for the court to have excluded from evidence the decal put into use by Crown before the accident, but never distributed to purchasers of equipment prior to May 1988. We agree.

In cases involving failure to warn, liability will be found where it is established that a manufacturer failed to act reasonably in providing an appropriate warning, given the risks involved in using the product *(Cover v Cohen,* 61 NY2d 261). The duty to warn is a continuing one and, as held in *Braniff Airways v Curtiss-Wright Corp.* (411 F2d 451, 453): "It is clear that after such a product has been sold and dangerous defects in design have come to the manufacturer's attention, the manufacturer has a duty either to remedy these or, if complete remedy is not feasible, at least to give users adequate warnings and instructions concerning methods for minimizing the danger."

Of course, knowledge of the dangers inherent in its product is an essential factor in considering whether a manufacturer has acted reasonably in response to evidence that a product is potentially dangerous *(Young v Robertshaw Controls Co.,* 104 AD2d 84). Thus, a critical element in the instant matter is the extent of the manufacturer's knowledge, either actual or constructive, of the risk presented by the use of its product *(Goldberg v Union Hardware Co.,* 162 AD2d 658).

Contrary to the IAS Court's determination, plaintiff's case was not dependent upon evidence of postmanufacture modifications, but, instead, upon the claim that defendant knew, nearly one year prior to the manufacture of the forklift sold to Manhattan Cable, of the risk of injury in tipover jumps, and of the need to provide a decal warning against such action. In light of these circumstances, we conclude that evidence should have been permitted on this issue, including that of defendant's 1970's tests, the 1987 discussions regarding implementation of the warning decals, and defendant's knowledge that similiar accidents had occurred prior to the manufacture of this equipment. It was error for the court to have prohibited the introduction of direct evidence on these issues,

and it was further error for the court to have prevented the use of such evidence in the cross-examination of defendant's witnesses. As held in *Haran v Union Carbide Corp.* (68 NY2d 710, 711-712), there is an exception to the rule of admission of a modification "where the plaintiff seeks to establish the feasibility of design alternatives and where the postmanufacture modification is relevant to establish the manufacturer's failure to warn of a known risk or defect" *(see also, Priolo v Lefferts Gen. Hosp.,* 54 Misc 2d 654).

The trial court's error in precluding this evidence was of such magnitude as to have affected the jury's verdict and the judgment is, accordingly, reversed, and a new trial granted *(see, Simmons v Ricks,* 149 AD2d 914).

Accordingly, the judgment, Supreme Court, New York County (Harold Baer, Jr., J.), entered November 18, 1991, which, following a jury verdict in favor of defendant, dismissed the complaint and the third-party action, should be reversed, on the law, the complaint and third-party action reinstated, and the matter remanded for a new trial, without costs.

MILONAS, J. P., ROSENBERGER, KUPFERMAN and ASCH, JJ., concur.

Judgment, Supreme Court, New York County, entered November 18, 1991, reversed, on the law, without costs, the complaint and third-party complaint and third-party action reinstated, and the matter remanded for a new trial.