[816 NYS2d 45]

Raman Mann, an Infant, by His Guardian ad Litem, George S. Akst, et al., Appellants, v Cooper Tire Company et al., Respondents, et al., Defendants.

First Department, June 1, 2006

**APPEARANCES OF COUNSEL**

*Trief & Olk*, New York City (*Barbara E. Olk* of counsel), for appellants.

*Herrick, Feinstein LLP*, New York City (*Alan D. Kaplan* of counsel), for respondents.

**OPINION OF THE COURT**

CATTERSON, J.

In this personal injury action arising out of an automobile accident allegedly caused by a defective tire, the plaintiffs appeal from an order partially denying their motion to compel

disclosure. The plaintiffs claim, inter alia, that the motion court narrowed disclosure to the point of "absurdity" and, in granting defendant-respondent Cooper Tire's cross motion, imposed a "crippling" and draconian confidentiality agreement that ostensibly bars the plaintiffs themselves from access to relevant documents.

The underlying personal injury action arises out of an accident on March 4, 2001, when a vehicle owned by defendant Nancy Esperanza Mann and driven by Chamkaur Singh Mann overturned on a trip in Quebec, Canada. The driver was killed in the accident and plaintiffs Raman Mann, an infant, Sundeep Singh, and Sukhjit Kaur (hereinafter referred to as plaintiffs), were seriously injured. The right rear tire of the vehicle was designed and manufactured by defendant Cooper Tire Company and distributed and/or sold by defendant TBC Corporation (hereinafter collectively referred to as Cooper Tire).[1] The tire was manufactured at Cooper Tire's Albany, Georgia plant between May 14 and May 20, 1995.

The plaintiffs sued Cooper Tire for negligence, products liability, and breach of warranty. Specifically, they alleged that the accident was caused by tread separation on the car's rear tire, that the tire was defectively designed and manufactured, and that Cooper Tire failed to provide adequate warnings. Subsequently, plaintiffs also alleged that Cooper Tire failed to prevent the tire from being contaminated by foreign objects and moisture during the manufacturing process.

Cooper Tire initially sought unsuccessfully to have the complaint dismissed as barred by Quebec law. (*Mann v Cooper Tire Co.*, 306 AD2d 23 [2003].) The plaintiffs then served interrogatories and document production requests on Cooper Tire. On September 29, 2003, dissatisfied with Cooper Tire's responses, the plaintiffs moved to compel disclosure.

In their affidavit of support for the motion, the plaintiffs complained that Cooper Tire's response to virtually every disclosure demand was that the demand was "overly broad and burdensome." The plaintiffs provided detailed examples of Cooper Tire's "frivolous responses and objections," such as Cooper Tire's response to an interrogatory asking for the identity of "persons and entities" who designed the tire. Without naming a single individual or entity, Cooper Tire responded: "Cooper employs many individuals in the various tasks which collec-

---

1. The defendants-respondents are represented by the same counsel.

tively can be considered 'designing' a particular tire thus no single person can be considered to have 'designed' the subject tire."

A response to an interrogatory about the company's "implementation of any policy, procedure or method and/or material to prevent tread separation" stated unhelpfully and in total contravention of any disclosure standards: "Cooper continually seeks to improve the quality of its products including but not limited to elements such as ride, appearance, uniformity, noise and durability."

The plaintiffs allege that Cooper Tire's failure to comply with legitimate disclosure requests is part of its "programmed response to discovery in cases involving tread separation." In support of this claim, the plaintiffs produced five court orders in five different lawsuits against Cooper Tire in which both state and federal courts held that the company engaged in, inter alia, "bad faith" and "wilful disobedience" during the discovery process.

On October 24, 2003, Cooper Tire cross-moved for a protective order and to compel plaintiffs to produce the subject tire for its inspection.[2] The motion court in a decision of June 8, 2004, ordered Cooper Tire to provide "more adequate responses." The court further ordered Cooper Tire to disclose, subject to a protective order, the ingredients of its tire formula though not the amounts or order in which they were used, and a general description of the curing process. Additionally, the court limited the scope of disclosure to tires with the "same green tire specifications" and limited the time frame regarding postmanufacture records to the period from May 14, 1995 (the date the court designated as the manufacturing date of the subject tire) to the date of the accident on March 4, 2001. The order of June 8 further held that plaintiffs were entitled to premanufacturing documents regarding the design of the subject tire, and post-manufacture documents relating to the testing and inspection of the tire; as well as documents regarding any complaints, legal or consumer, about tread separation.

On June 21, 2004, Cooper Tire sought a stay of enforcement and moved to reargue. Protective order notwithstanding, Cooper Tire argued that the motion court had misapplied the law

---

**2.** It is worth noting that plaintiffs allege that they, themselves were not able to examine the tire except for limited access because its release by Canadian authorities was, in fact, predicated on Cooper Tire's consent in writing.

because its tire formula and ingredients are trade secrets and "not subject to disclosure under any circumstances."

On November 10, 2004, the motion court rescinded its June 8 order, holding that it had misapplied the relevant law. The court now held that Cooper Tire's tire formula and curing process were trade secrets and not discoverable. It further ordered that the remainder of the disclosure sought by the plaintiffs be subject to a confidentiality agreement drafted by Cooper Tire, to the extent that the plaintiffs seek "technical data, research, materials, and documents that provide insight as to the inner workings of the company." The court reinstated that part of its order limiting disclosure to tires with the "same green tire specifications" and limiting the time of postmanufacture documents to the period between manufacture in May 1995 and the accident. Documents relating to the tire's design, testing and manufacture were further limited to a period of two years prior to the manufacture of the subject tire in May 1995 or from the time the tire was first designed, whichever was greater.

On appeal, the plaintiffs assert that the motion court erred in granting Cooper Tire's motion and in curtailing disclosure in a "manner tantamount to allowing respondents to conceal any relevant documents." The plaintiffs further argue that the confidentiality order "cripples" their ability to conduct discovery and that the court's superceding order ignores Cooper Tire's history of wilful disobedience and egregious conduct, which in several instances has prompted other courts to impose sanctions in the tens of thousands of dollars.

Specifically, the plaintiffs assert that disclosure relating to the ingredients of the tire formula goes to the heart of their products liability lawsuit, and that, in any event, Cooper Tire's formula for the now 11-year-old tire is not a trade secret. They further assert that evidence of available alternatives is particularly relevant and that limiting disclosure to the "same green tire specifications" is an "absurdity" given that it prohibits disclosure that could lead to relevant information of tread separation in other tires manufactured by Cooper Tire.

For the following reasons we agree, and modify the motion court's order to compel disclosure as detailed below. At the outset, we acknowledge that discovery determinations rest within the sound discretion of the motion court. (*Andon v 302-304 Mott St. Assoc.*, 94 NY2d 740, 745 [2000], citing *Brady v Ottaway Newspapers*, 63 NY2d 1031, 1032 [1984].) Further, we note that it is rare that such motion court determinations are

reversed or modified on the law. (Patrick M. Connors, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3101:5A, at 20.) Rather, this Court is vested with the power to substitute its own discretion for that of the trial court even in the absence of abuse. (*Andon v 302-304 Mott St. Assoc.*, 94 NY2d at 745.)

Here, upon review of the record, and having evaluated the competing interests, i.e., plaintiffs' need for information on the one hand and defendants' need to protect against competitive harm and burdensome demands on the other, we find that the motion court misapplied the law, and exercised its discretion improvidently.

The law pertaining to disclosure in New York is clear and well settled. The scope of disclosure provided by CPLR 3101[3] is generous, broad, and is to be construed liberally. (*Allen v Crowell-Collier Publ. Co.*, 21 NY2d 403, 406 [1968] [phrase "material and necessary" must be "interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy"].) CPLR article 31 was substantially amended in 1993 to broaden the reach of disclosure devices, but the general view is that the amendments merely codified what New York courts had already effectively determined by making disclosure standards comparable to the liberal, federal standard of discovery under Federal Rules of Civil Procedure rule 26 (b) (1). (*See* 21 NY2d at 407, citing *Rios v Donovan*, 21 AD2d 409 [1st Dept 1964]; *see also e.g. Fell v Presbyterian Hosp. in City of N.Y. at Columbia-Presbyt. Med. Ctr.*, 98 AD2d 624, 625 [1st Dept 1983] ["(p)retrial disclosure extends not only to admissible proof but also to testimony or documents which may lead to the disclosure of admissible proof"].) In effect, the interpretation of CPLR 3101's disclosure standard by the courts of this state "demonstrates New York's commitment to ensuring that cases be decided on their merits after a full vetting of the facts." (Patrick M. Connors, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3101:4, at 18.)

Cooper Tire seeks to roll back the clock on liberal disclosure. Review of the record in this case reveals instances where Cooper Tire has exhibited "wilful disobedience, bad faith and gross indifference to plaintiffs' rights" in the discovery process. Courts in different jurisdictions have found that Cooper Tire

---

**3.** CPLR 3101 (a) provides that "There shall be full disclosure of all matter material and necessary in the prosecution or defense of an action, regardless of the burden of proof."

has committed numerous discovery violations, including improperly withholding documents; wilfully concealing evidence; wilfully concealing the existence of discoverable information; and destroying documents it knew or should have known would become material in litigation. Now, Cooper Tire arrives at our door exhibiting what can only be characterized as a serious misapprehension that this Court will permit it to violate disclosure requirements in New York.[4]

First, we modify that part of the motion court's November 10, 2004 order holding that the tire formulae and curing process are trade secrets and not "discoverable" if by the term "formulae" the court intended to include the ingredients of the formulae.[5] Additionally, even if the ingredients of the formula for the subject tire were deemed to be a trade secret by the court below, the court erred in determining they are not discoverable.

In New York when trade secrets are sought by an adverse party in litigation, the burden of establishing that the information sought is a trade secret lies with the disclosure objectant. If that burden is met, the party seeking disclosure must show that the information appears to be indispensable and cannot be

---

**4.** As an illustration of Cooper Tire's bad faith and attempt to mislead this Court we note that in its motion to reargue, Cooper Tire assured the court below that it would be willing to indicate "whether or not halobutyl rubber was used in the manufacture of the subject tire." Now, on appeal, Cooper Tire argues thus: "information regarding specific ingredients of the compound formula (halobutyl, antioxidants and antiozonants) is clearly part and parcel of the trade secrets protection granted by the court below [and] as pointed out in its motion to reargue, Cooper's rubber compound ingredient and formula cannot be disclosed under any circumstances."

**5.** In its June 8, 2004 order the motion court held that "defendant has met the burden of demonstrating that the *formula of ingredients* used in the manufacture of tires [is a trade secret]." The court then ordered defendant to disclose "the ingredients in its tire formula" but not the "amounts of each ingredient" or the "order in which they are used."

Cooper Tire moved to reargue asserting, inter alia, that both the "ingredients" and the "compound formulae," that is the "manner and order they are put together" are trade secrets, and that the motion court had made an invalid distinction between them. Cooper Tire thus argued that neither the ingredients nor the formulae could be subject to discovery "in any fashion." On November 10, 2004, the motion court rescinded its original order finding that it had "mis-applied the relevant law." The motion court then observed that Cooper has demonstrated that its "tire formulae" is a trade secret, and not discoverable by plaintiffs." However, nowhere in its entire opinion, did the motion court refer to Cooper Tire's argument about the invalidity of the distinction, or state that the term "formulae" as used in the new order included the ingredients/components in the formula as well as the manner and order in which they were used.

acquired in any other way. (*Curtis v Complete Foam Insulation Corp.*, 116 AD2d 907, 909 [3d Dept 1986], citing *Drake v Herrman*, 261 NY 414 [1933].)

Cooper Tire urges this Court to accept that the motion court properly determined that the ingredients as well as the formula are trade secrets, and that the plaintiffs failed to establish that the information is indispensable to their case. The plaintiffs, however, maintain that the court's November 10 order merely restated that the defendant's tire formulae and curing process are trade secrets and that the ingredients about which the plaintiffs seek disclosure were not intended to fall within the term "formulae." Regardless of the motion court's intent, we reject Cooper Tire's assertion that the "formula is the ingredients" and find that a distinction can be made between the formula and the ingredients thereof. (*See Thomas v Soft Sheen Prod. Co.*, 118 AD2d 493 [1st Dept 1986] [distinction made between actual combination and percentage of ingredients in a hair care formula and the ingredients themselves].) More significantly, we are not persuaded that either the ingredients or the formula of the subject tire deserve trade secret protection in this case.

New York law has adopted the definition of a trade secret from Restatement of Torts § 757, Comment *b* and recognizes that a trade secret exists where there is a "formula, pattern, device or compilation of information . . . used in one's business . . . which gives [one] an opportunity to obtain an advantage over competitors who do not know or use it." (*Ashland Mgt. v Janien*, 82 NY2d 395, 407 [1993] [internal quotation marks omitted]; *see Wiener v Lazard Freres & Co.*, 241 AD2d 114, 123-124 [1st Dept 1998], citing Restatement [Third] of Unfair Competition § 39.)

Cooper Tire seeks to categorize the formula and ingredients of an 11-year-old tire as a trade secret stating that it is "crown jewel scientific information developed through thousands of man-hours of research and testing and the expenditure of untold millions of dollars." This conclusory assertion does not meet Cooper Tire's burden to demonstrate that the information at issue is in fact a trade secret. First, cost, whether it be assessed in time, dollars or both, is not dispositive in determining whether a process or formula involves a trade secret. Second, although Cooper Tire asserts that disclosure of a formula and/or ingredients of a tire manufactured more than 11 years ago could have a "devastating" effect, and that the formula is the "life-

blood" of the company, there is nothing in the record to suggest Cooper Tire continues to use the same formula or ingredients that it used more than a decade ago in the manufacture of the subject tire. On the contrary, the following is an illuminating passage from a case that Cooper Tire cited extensively before this Court: "[a]s automobiles . . . continually change through technological improvement . . . . This, of course, necessitates continuing changes in the components of those tires and in the rubber compounds used in those components." (*Bridgestone/Firestone, Inc. v Superior Ct.*, 7 Cal App 4th 1384, 1396, 9 Cal Rptr 2d 709, 715 [Ct App 1992].)

In any event, as the Court of Appeals has observed, information cannot qualify for trade secret protection unless it is, in fact, secret. (*Ashland Mgt. v Janien*, 82 NY2d at 407.) Considerations pertinent in determining whether information is secret include "the extent to which the information is known outside of [the] business" and "the ease or difficulty with which the information could be properly acquired or duplicated by others." (*Id.*, quoting Restatement of Torts § 757, Comment *b*.)

The plaintiffs, who state that they are not seeking the formula but only information about ingredients, argue that to classify those as a trade secret is improper because some of this information is patently not secret. For example, a publication titled The Smithers Report reverse-engineers tires, and thus identifies various components of tires produced by various tire manufacturers. The record includes confirmation during the deposition of a principal chemist for Cooper Tire in another lawsuit involving a defective tire, *Coleman v Cooper Tire & Rubber Co.* (CV202-036, SD Ga, Brunswick Div, 2002), that The Smithers Report, on a regular basis, identifies ingredients used in the construction of tires. For example, the reports include whether natural or synthetic rubber is used, and information about polymers, chemical compounds that make up the skim stock compound, reinforcement material and softeners or plasticizers used in the tire. Further, the plaintiffs point to the testimony of another Cooper Tire chemist as to ingredients used in making certain tires, and establish that testimony was given without any demand for confidentiality.[6]

---

6. The availability of information through sources like The Smithers Report does not necessarily aid the plaintiffs since first, it is unlikely that the report would be admissible evidence; second we find most persuasive the plaintiffs' argument that while forensic tire experts can testify as to propriety

Even if Cooper Tire had met its burden to show that the ingredients are a trade secret, it would be unavailing since there is merit in the plaintiffs' assertion that disclosure of the ingredients and alternative tire designs is indispensable to their products liability lawsuit. Cooper Tire argues that plaintiffs do not need the information about the formula or the ingredients since it claims that plaintiffs' expert has already examined the tire and found it defective without that information. Cooper Tire also cites to *Bridgestone/Firestone* (7 Cal App 4th 1384, 9 Cal Rptr 2d 709 [1992]), where the plaintiffs failed to show that tire formulae were "relevant and necessary" to prove that the tire was defective. In that case, however, the focus of discovery demands was the rubber compound formula, and the tire expert for the plaintiffs in the products liability action conceded that he did not need the formula to establish a prima facie case that the tire was defective.

Here, the plaintiffs maintain that it is not the formula that is the focus of their disclosure demand but the ingredients or components of the subject tire. Further, they assert that, since they are alleging a design defect, the information they seek about the ingredients is indispensable to their cause of action. The plaintiffs correctly assert that they "must be able to demonstrate to a jury how and why the tire failed and what design and manufacturing alternatives existed which were not employed in the design and manufacture of the subject tire."

Specifically, the plaintiffs assert that they must learn whether Cooper Tire used components like halobutyl, a superior form of rubber compound, and various antioxidants and antiozonants. They maintain that in a products liability action, evidence of available alternatives is particularly relevant.

Ultimately, in substituting our discretion for that of the motion court and compelling disclosure of the ingredients in the formula for the subject tire, we must balance the plaintiffs' need against the defendants' possible injury from competitive harm. The motion court accepted the conclusory assertions of the affidavit submitted by Lyle Campbell, Cooper Tire's in-house forensic tire expert and consultant, wherein Mr. Campbell stated that disclosure of the formula and curing process

---

of the compound formula by observation and inspection or testing similar tires, "unless the [information] is provided the defendants will undoubtedly seek to discredit the plaintiffs' expert at the time of trial by claiming either that observation and inspection alone is insufficient or that the testing was erroneous and did not correctly identify the components."

would "put the company out of business" and cause "irreparable harm." The motion court observed that Mr. Campbell "appears to be qualified to make such an assessment."

We are not persuaded by Mr. Campbell's assessment or by Cooper Tire's assertion that even if the ingredients are subject to a protective order and even if the plaintiffs' witnesses or experts are not given copies of the formulae to retain, nevertheless the recipe for the compounds *"would remain in their memory."*

Thus, Cooper Tire is ordered to make disclosure forthwith of such information about the ingredients of the subject tire and about alternative designs as the plaintiffs have requested. More specifically, Cooper Tire will provide the plaintiffs with documents and answers responsive to their inquiries as to whether halobutyl rubber was used in the manufacture of the subject tire, and if it was not, to identify the product that was used instead; and will disclose whether antioxidants and antiozonants were used in the manufacture of the subject tire; and Cooper is further ordered to provide information and documents regarding Cooper's use of nylon overlay.

■ Next, we find that the motion court erroneously limited the scope of disclosure to tires with the "same green tire specifications" as the tire in question. The plaintiffs initially moved to compel disclosure, in part, because Cooper Tire refused to produce documents unless they related to tires that had the "same green tire specifications" and were manufactured in the same plant as the subject tire. The plaintiffs requested disclosure on similar tires, defined as those with the same or substantially similar skim stock material and those with the same or substantially similar belt wire material. We accept Cooper Tire's explanation that tires, even those with the same belt wire or skim stock, may be different in size or type and therefore do not qualify as substantially similar.

However, we reject the claim of Lyle Campbell, Cooper Tire's previously mentioned forensic and technical consultant, that "from an engineering and technical standpoint" similar tires are those manufactured to the same green tire specifications and that only those tires manufactured to the same green tire specifications are sufficiently similar to be "capable of meaningful comparison."

According to an affidavit submitted by Cooper Tire, a green tire specification is the "blueprint to which a given tire is manufactured . . . . It states the dimensions, weights, and phys-

ical attributes of the components in a tire. It also states the order in which the components are placed in the tire during the manufacturing process." Where "same" green tire specifications exist they refer to tires that are identical right down to the color of the sidewalls. According to Cooper Tire's expert, tires have different green tire specifications even though they are identical except for the color of their sidewalls.

In effect, the motion court's order to limit disclosure to tires with same green tire specifications limits disclosure to identical tires. Yet, there is simply no evidence in the record, nor any rationale, that suggests that tread separation is limited to either one or a range of green tire specifications. Tread separation problems may be present in tires other than those sharing the same green tire specifications, and thus the scope of discovery in this case should include documents relating generally to the tread separation defect or problem.

To rule otherwise would mean, as the plaintiffs assert, that Cooper Tire would not produce documents in which tread separation and foreign object contamination is discussed generally. For example, the plaintiffs point to Cooper Tire's communications with government agencies, or company documents where tread separation in tires made of the same materials but not same specifications has been analyzed. The plaintiffs maintain, and we agree, that such information is of "vital importance irrespective of the make of tire involved [since] it contains evidence of what Cooper Tire knew of belt and tread separations." As plaintiffs assert, to limit disclosure to "same green tire specifications" rather than to tires with the same defect of tread separation is an "absurdity" since Cooper Tire will be able to conceal documents probative on the issues of notice, defectiveness and dangerousness. For the same reasons, it would be absurd to limit disclosure to the same plant as the one where the subject tire was manufactured.

■ We have held that disclosure on the issue of the manufacturer's notice of the alleged product defect is an essential factor in products liability and negligence actions. (*Power v Crown Equip. Corp.*, 189 AD2d 310 [1993].) Thus, the plaintiffs are entitled to premanufacture disclosure going back to 1985, which information is material and relevant on the issue of whether Cooper Tire had notice of the alleged defective condition that resulted in tread separation. (*See Harmon v Ford Motor Co.*, 89 AD2d 800 [1982].) The plaintiffs have established in the record that Cooper Tire proposed a settlement of 32 pending class ac-

tions and offered its customers a free replacement tire for every steel-belted radial manufactured between 1985 and 2001 that suffered tread separation as a result of a manufacturing defect. Therefore, the motion court's ruling that the only premanufacturing disclosure allowed was that relating to the subject tire's design, testing and manufacture for a period limited by the court is erroneous as is the ruling that denied plaintiffs discovery as to notice of defective conditions.

While defendants contend that it is unduly burdensome to produce these requested documents, the claim is without merit since Cooper Tire has had to produce the same documents in other actions involving tread separation and, as other courts have found, the company has the information concerning all of its radial passenger tires with allegations of tread separation in its computer system.

■ Finally, we acknowledge that judicial safeguards in the form of protective orders and confidentiality agreements exist and are mandated for information which is "subject to abuse if widely disseminated." (*McLaughlin v G. D. Searle, Inc.,* 38 AD2d 810, 811 [1st Dept 1972].) In this case, however, the motion court improperly adopted wholesale the "draconian" protective order drafted by Cooper Tire whereby Cooper Tire was effectively permitted to unilaterally designate any document it chose as confidential.

In *Bristol, Litynski, Wojcik v Town of Queensbury* (166 AD2d 772, 773-774 [3d Dept 1990]), the Court held that protective orders should be limited to trade or business secrets and are required to be specific. In similar fashion, this Court finds that the following are not trade or business secrets and are not proper subjects of a protective order or promise of confidentiality: the job descriptions of identified personnel; pleadings and bills of particulars for similar litigation; customer complaints; records of returns involving tire tread separation; the brand names of tires having the same green tire specifications; sources of parts and materials—unless Cooper buys all of its ingredients from outside sources. Further, "confidential" material shall not include (a) advertising materials, (b) materials that on their face show that they have been published to the general public, or (c) documents that have been submitted to any governmental entity without request for confidential treatment.

Moreover, Cooper Tire's confidentiality agreement is unacceptable as to form. The plaintiffs assert, and upon review of the record we agree that, as drafted, the protective order and

promise of confidentiality varies substantially in form from the protective orders granted Cooper Tire in other cases. Particularly unacceptable is the clause dealing with the threat of a 10-year jail sentence. None of the confidentiality promises from other cases submitted by Cooper Tire threatens potential witnesses with a 10-year jail sentence. Second, none of the protective orders from other cases submitted by Cooper goes so far as to prevent anyone who has consulted for a competitor or an entity in privity with a competitor within the past two years, or who expects to perform such consultation in the next two years, from seeing confidential documents, even at a deposition. That provision must be amended before the confidentiality agreement is used. As presently written, the protective order also appears to prevent the actual plaintiffs (the clients, as opposed to their lawyers) from seeing confidential material unless they happen to be deponents. On appeal, however, the defendants concede that the plaintiffs may have access to confidential material.

Accordingly, the order of the Supreme Court, Bronx County (Nelson Roman, J.), entered November 18, 2004, which, in an action for personal injuries allegedly caused by a defective tire, upon reargument, granted defendants manufacturer's (Cooper Tire) and distributor's (TBC Corporation) motion for a protective order, and partially denied plaintiffs' motion to compel disclosure, should be modified, on the law, the facts and in the exercise of discretion, to compel full disclosure as detailed in, and consistent with, this opinion, and otherwise affirmed, with costs in favor of plaintiffs payable by defendant Cooper Tire.

BUCKLEY, P.J., MARLOW, SWEENY and McGUIRE, JJ., concur.

Order, Supreme Court, Bronx County, entered November 18, 2004, modified, on the law, the facts and in the exercise of discretion, to compel full disclosure as detailed in, and consistent with, the opinion herein, and otherwise affirmed, with costs in favor of plaintiffs payable by respondent Cooper Tire.