| |
|---|
| **Matter of Scott-Heron** |
| 2024 NY Slip Op 31287(U) |
| April 12, 2024 |
| Surrogate's Court, New York County |
| Docket Number: File No. 2011-2283/J |
| Judge: Rita Mella |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

New York County Surrogate's Court
DATA ENTRY DEPT.

APR 1 2 2024

-------------------------------------------------------------------x
Accounting by Rumal Rackley as the Temporary
Administrator of the Estate of

        GILBERT SCOTT-HERON,

                        Deceased.
-------------------------------------------------------------------x

DECISION and ORDER
File No.: 2011-2283/J

M E L L A, S.:

The following submissions were considered in deciding the cross-motions described below:

| Documents Considered[1] | Numbered |
| --- | --- |
| Notice of Motion to Compel Production and Affirmation of Albert V. Messina, Jr., in Support, with Exhibits | 1,2 |
| Affirmation of Raquiyah Kelly-Heron, in Support of Motion | 3 |
| Notice of Cross-Motion for a Protective Order, Affirmation of Matthew B. Abrams, with Exhibits | 4,5 |
| Reply Affirmation of Albert V. Messina, Jr., with Exhibit | 6 |

      In this contested accounting proceeding by Rumal Rackley (Rumal) as Temporary Administrator of the estate of Gilbert Scott-Heron, Respondent Chegianna Newton (Chegianna) moves, pursuant to CPLR 3124, to compel Rumal to produce documents responsive to her SCPA 2211 document demand dated March 29, 2021, and Rumal cross-moves for a protective order pursuant to CPLR 3126.

*Background*

      Decedent, noted musician and spoken word artist Gilbert Scott-Heron, died intestate on May 27, 2011, leaving behind a complex estate of contested artistic rights and few liquid assets.

---

[1] Although the Notice of Motion and the Notice of Cross-Motion both state that a memorandum of law is appended, the court has no record of the filing of any memoranda.

Pursuant to this court's order, Rumal acted as Temporary Administrator beginning on November 30, 2011. Following a kinship hearing held on December 5, 2018, the court determined that decedent was survived by four adult children as his sole distributees: Rumal, Chegianna, Gia Scott-Heron (Gia), and Raquiyah Nia Kelly Heron (Raquiyah). By Decision and Order dated May 2, 2019, the court granted Rumal's petition for Letters of Administration and denied Raquiyah's cross-petition for same. The issuance of full letters to Rumal was contingent upon the posting of a bond in the amount of $373,404, which he has not posted.[2]

Rumal subsequently filed a court-ordered accounting on October 1, 2018, covering the period from October 1, 2013 through March 6, 2018 (Account, as amended).[3] Chegianna then served her pre-objection SCPA 2211 document demand dated March 29, 2021. The demand includes 124 separate requests for documents supporting Rumal's Account and concerning decedent's estate generally. Although Rumal served a response dated April 30, 2021, his response did not include any documents. With respect to numerous document requests, however, Rumal advised that he would produce nonprivileged, responsive documents in his possession, custody, or control. He further stated that he would seek a protective order with respect to other document requests. The instant motions followed.

*Discussion*

The standards for evaluating discovery motions such as these are clear:

> "Disclosure should be permitted for all evidence 'material and necessary' to the prosecution or defense of an action (CPLR 3101). What constitutes 'material and necessary' should be construed liberally to require disclosure of any facts bearing on the controversy which assist by

---

[2] Rumal has not secured a bond allegedly due to excessive litigation regarding decedent's estate.
[3] Rumal had previously filed an account for his proceedings as Temporary Administrator for the period from November 30, 2011 (the date of his appointment) through September 30, 2013.

2

sharpening the issues and reducing delay. 'The test is one of usefulness and reason'"

(*Polygram Holding, Inc. v Cafaro*, 42 AD3d 339, 340-341 [1st Dept 2007], quoting *Allen v Crowell-Collier Publ. Co.*, 21 NY2d 403, 406 [1968]). The court has wide discretion to determine the scope of disclosure (*Allen*, 21 NY2d at 406). In addition, SCPA 2211(2) states:

> "The fiduciary may be examined under oath by any party to the proceeding either before or after filing objections, if any, to the account, as to any matter relating to his or her administration of the estate. The party conducting such examination shall be entitled to all rights granted under article thirty-one of the civil practice law and rules with respect to document discovery, regardless of whether such examination takes place before or after such party files objections."

### *The Parties' Contentions*

In her moving papers, Chegianna contends that her motion to compel must be granted because her demand seeks documents clearly relevant to Rumal's Account. She asserts that she will suffer severe prejudice if the documents are not produced, as she will be unable to assess whether valid objections exist and will be prevented from conducting a proper SCPA 2211 examination of Rumal. Chegianna observes that although Rumal agreed to produce certain nonprivileged, responsive documents in his possession, custody or control, he did not provide any documents, did not submit a privilege log in compliance with CPLR 3122(b), and failed to state that he is not in possession of responsive documents. With respect to the specific document requests to which Rumal objected on the ground that either a protective order or confidentiality agreement was warranted, she notes that Rumal secured neither. Chegianna posits that she "is an equal owner of the same [estate assets as Rumal] with an equal right to the information, income and distributions" (Messina's Aff. in Support ¶15). She further claims that Rumal's "self-dealing

3

and lack of transparency must be scrutinized, which starts with his discovery obligations" (Messina's Aff. in Support ¶15).[4]

In opposition to Chegianna's motion and in support of his cross-motion, Rumal argues that any claim of prejudice due to his failure to produce requested documents is suspect, because Chegianna did not immediately move to compel their production. In addition, Rumal asserts that by requesting certain documents that are readily accessible to her, Chegianna is showing disregard for estate resources. He further opines that the document requests are overbroad, unduly burdensome, and irrelevant, and that Chegianna is essentially seeking the production of every scrap of paper pertaining to the administration of decedent's estate. Rumal next invokes the attorney-client privilege with respect to certain enumerated requests. He also claims that his home "was tragically destroyed by fire several years ago and several years into the administration of this Estate," and that much original documentation relevant to Chegianna's discovery demand has been lost (Abrams' Aff. in Opp. ¶14).

As for Chegianna's self-dealing allegation, Rumal disputes the claim that he engaged in any improper conduct and states that the expenses listed in his Account are reasonable and necessary. According to Rumal, Chegianna's motion to compel is part of a long-running smear campaign against him orchestrated not only by Chegianna, but by decedent's other distributees. He complains that his siblings (and individuals related to them) have denigrated both him and decedent on social media.

Rumal contends that in September 2022, Chegianna usurped an estate opportunity regarding a studio-backed documentary production, which would allow Chegianna to obtain

---

[4] Raquiyah submitted an affidavit in support dated August 25, 2023, echoing Chegianna's concerns.

money "on the side" to the estate's detriment (Abrams' Aff. in Opp. ¶¶5-6). He opines that Chegianna would likely pass on to her documentary collaborators sensitive information received through her discovery demand. More generally, Rumal posits that none of his fellow distributees can be trusted with estate-related financial records, because to promote their individual interests they "have previously contacted third parties, posted publicly about Estate business and disputes, [and] jeopardized the Estate's reputation as an entity which can be dealt with reasonably and professionally" (Abrams' Aff. in Opp. ¶13). He predicts that his siblings would not abide by a confidentiality agreement with respect to such documents. Rumal instead requests a protective order with an "attorneys' eyes only" restriction, as well as additional unspecified restrictions. He reasons that such relief is warranted because he and the other distributees are competitors, the details contained in the requested licensing-related documents are trade secrets, and a protective order of this nature "would significantly reduce the likelihood of catastrophic consequences of an unredacted and unfiltered disclosure" to Chegianna and the other distributees (Abrams' Aff. in Opp. ¶¶19-21).

In reply, Chegianna points out that after threatening in April 2021 to move for a protective order, Rumal did not in fact seek such relief until after Chegianna filed the instant motion to compel in 2023. She explains that the timing of her motion was driven by a desire for judicial economy, noting that the court directed Rumal in March 2023 to account for a subsequent period, and Chegianna sought to conduct SCPA 2211 examinations with respect to the instant accounting and the subsequent accounting at the same time. Chegianna states that her document requests are not overbroad, as they are generally limited to the time frame between October 1, 2013 and March 6, 2018, with the exception of documents created after March 6, 2018 that refer to events during the accounting period. She surmises that Rumal has failed to

produce any documents thus far because he is reaping personal benefits at the expense of the estate's other distributees, and has become complacent in his role as Temporary Administrator.

Regarding the fire that allegedly destroyed Rumal's home, Chegianna observes that Rumal's motion papers do not state whether the fire occurred before the deadline to respond to her discovery demand had passed, nor do they include an explanation for why the documents were not properly protected. She points out that Rumal never notified anyone of the fire before responding to the motion, and did not provide a change of address to the court.

With respect to Rumal's complaints regarding Chegianna's alleged efforts to usurp an estate opportunity for personal gain, Chegianna asserts that the purported events to which he refers are beyond the scope of this accounting, and occurred well after April 30, 2021, the date that Rumal's document production was due. She further opines that Rumal has provided only speculation to support his contention that any distributee harmed the estate or diverted any estate benefit. As for Rumal's request for a protective order, Chegianna argues that cases cited by Rumal are inapposite because Rumal and the other distributees are not competitors, and the alleged "trade secrets" are not actually secrets since the information requested by Chegianna is already known to licensing and contracting parties.

*Analysis*

As an initial matter, the court rejects Rumal's assertion that Chegianna took a lackadaisical approach to outstanding discovery. The record reflects that on April 30, 2021, one month after Chegianna served her discovery demand, Rumal advised her that he would begin a "rolling production" of some documents in one week's time (Ex. G. to Motion to Compel), and further stated that with respect to other documents, he would either move for a protective order or obtain a confidentiality agreement. However, Rumal did not produce a single document over

6

the next two years, nor did he seek a protective order. Between 2021 and 2023, Chegianna sent multiple follow-up letters and emails noting Rumal's non-responsiveness, and also sought court intervention by requesting a conference.[5] Accordingly, Rumal's attempt to cast Chegianna as the dilatory party is, at best, disingenuous.

Although Rumal complains that he should not be required to produce various documents because they are public records that can be accessed by Chegianna without burdening the estate, he provides no citations to support this contention. In any event, relevant case law does not support his position (*see Z.D. v MP Mgt., LLC*, 150 AD3d 550, 552 [1st Dept 2017] [observing that "[t]he fact that plaintiffs may have been able to access some evidence of lead paint violations in the building from HPD does not preclude plaintiffs from seeking these records directly from defendants in discovery"]; *Matter of Steam Pipe Explosion at 41st St. & Lexington Ave.*, 127 AD3d 554, 556 [1st Dept 2015] [stating that defendants/third-party plaintiffs' "independent efforts to obtain publicly-available documents . . . do not extinguish third-party defendant's obligations to comply with the CPLR"], *affd* 27 NY3d 985 [2016]). Moreover, although Rumal broadly objected to Chegianna's discovery demand on this ground in the "General Responses and Objections" portion of his discovery response, in his specific responses, he essentially agreed to produce responsive, nonprivileged documents even though Chegianna could glean the information from other sources. Accordingly, with respect to document request Nos. 1, 3, 4, 11, 12, 46, 47, 48, 49, 52, 53, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 112, 113, 114, 115, 116, 117, 118, 119, and 120, the

---

[5] At the time the conference was requested, jurisdiction had still not been obtained over all necessary parties, so the conference was premature.

7

motion to compel is granted, and Rumal must produce all responsive, nonprivileged documents in his possession, custody, or control within 30 days of service of this order upon him. In the event that a privilege is asserted with respect to any responsive documents, he must provide a privilege log (CPLR 3122[b]). In the event that no responsive documents exist, he must so state.

With respect to document request Nos. 9, 10, 50, 51, 54, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, and 95, Rumal stated in his response to Chegianna's demand that he would provide nonprivileged, responsive documents in his possession, custody, or control. To date, he has not done so. Accordingly, Chegianna's motion to compel is granted as to these document requests, and within 30 days of service of this order upon him, Rumal must produce responsive, nonprivileged documents in his possession, custody, or control, if any. In the event that a privilege is asserted with respect to any responsive documents, he must provide a privilege log (CPLR 3122[b]). In the event that no responsive documents exist, he must so state. The motion is also granted as to document request No. 39 (to which Rumal responded that he was "reviewing the Estate's records in an effort to produce those [responsive] non-privileged documents in his possession, custody, or control, if any" (Ex. F to Motion to Compel)), and the same directives apply.

Rumal's response to document request No. 2 (seeking safe deposit box information)—namely, that no responsive documents are in his custody or control—is satisfactory. In addition, Rumal properly objected to document request Nos. 121 (seeking documents "not previously demanded" pertaining to distributions), 123 (seeking certain "complete records . . . not previously produced"), and 124 (seeking "[a]ll other non-privileged documents that were relied upon or consulted in preparing the Accounting"), as the requests are indeed vague and overbroad

8

(*see Mendelowitz v Xerox Corp.*, 169 AD2d 300 [1st Dept 1991]). Accordingly, the motion is

denied with respect to these document requests.

By contrast, Rumal's objection to document request No. 122, which seeks "[c]opies of

any records of appointments, calendar books, diaries or logs maintained by [Rumal] regarding

the performance of his duties as Administrator," is improper (Ex. F to Motion to Compel).

Chegianna's request is for specific, relevant items within a limited time frame (*see id.* at 303-

304). Accordingly, the motion to compel is granted with respect to request No. 122, and within

30 days of service of this order upon him, Rumal is directed to produce the requested items,

provide a privilege log if any privilege is claimed with respect to a responsive document (CPLR

3122[b]), or state that no responsive documents are in his possession, custody, or control.

The remaining discovery requests are the subject of Rumal's cross-motion for a

protective order, based on the theory that Rumal and the other distributees are competitors and

the documents sought constitute trade secrets. Pursuant to CPLR 3103(a),

> "[t]he court may at any time on its own initiative, or on motion of any
> party or of any person from whom or about whom discovery is sought,
> make a protective order denying, limiting, conditioning or regulating the
> use of any disclosure device. Such order shall be designed to prevent
> unreasonable annoyance, expense, embarrassment, disadvantage, or other
> prejudice to any person or the courts."

The burden of showing that the disclosure sought is improper is upon the party seeking the

protective order (*see Roman Catholic Church of the Good Shepherd v Tempco Sys.*, 202 AD2d

257, 258 [1st Dept 1994]).

"Attorneys' eyes only" orders, as Rumal requests, "have been upheld in order to protect

the confidentiality of trade secrets obtained in the course of discovery" (*Bernstein v On-Line

Software Intl.*, 232 AD2d 336, 337 [1st Dept 1996]). However, "information cannot qualify for

9

trade secret protection unless it is, in fact, secret" (*Mann v Cooper Tire Co.*, 33 AD3d 24, 32 [1st Dept 2006]; *see Susan D. Fine Enters., LLC v Steele*, 66 AD3d 613, 614 [1st Dept 2009]). Rumal has not established the element of secrecy. Moreover, "a trade secret exists where there is a 'formula, pattern, device or compilation of information . . . used in one's business . . . which gives [one] an opportunity to obtain an advantage over competitors who do not know or use it" (*Mann*, 33 AD3d at 31 [internal quotation marks omitted]). Here, although Rumal's siblings have expressed displeasure regarding Rumal's behavior, the court is unpersuaded by Rumal's claim that he and the other distributees are competitors. Thus, Rumal has failed to meet his burden of showing that the requested documents constitute trade secrets protected from disclosure (*see Susan D. Fine Enters., LLC*, 66 AD3d at 614), and is not entitled to an order limiting disclosure to legal counsel. For these reasons, his motion for a protective order in the form of an "attorneys' eyes only" directive is denied.

In light of this ruling, within 30 days of service of this order upon him, Rumal must produce any nonprivileged documents in his possession, custody, or control responsive to document request Nos. 5, 6, 7, 8, 13, 18,[6] 19, 20, 31, 36, 37, 40, 41, 42, 43, 44, 45, and 109. In the event that a privilege is asserted as to any responsive documents, he must provide a privilege log (CPLR 3122[b]). If no responsive documents exist, Rumal must so state.

However, Rumal is not required to produce documents responsive to request Nos. 14, 15, 16, 17, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 32, 33, 34, 35, 38, 110, and 111. Although Rumal failed to establish his entitlement to a protective order based on his trade secrets argument, the court agrees with his alternative contention that the demands are vague and/or overbroad.

---

[6] Rumal failed to serve an initial response to demand number 18.

Having issued directives regarding each of Chegianna's document requests, the court is constrained to address the parties' behavior, both past and future. There is some support in the record for Rumal's claim that various distributees have publicly criticized him and failed to consult with him on matters pertaining to decedent. However, Rumal's prolonged silence in the face of repeated requests for discovery presumably exacerbated an already fraught situation. The court is deeply troubled by Rumal's decision to proceed in this manner while acting as a fiduciary. Nevertheless, there is merit to his position that reputation is important, and a tarnished legacy due to social media wars could have an impact on the estate's ability to flourish financially, to the detriment of all distributees. Accordingly, all parties are cautioned that estate information to which the public does not have access should not be disseminated to the public or to nonparties who might disseminate the information.

In sum, Chegianna's motion to compel is granted to the extent that within 30 days of service of this order upon him, Rumal must produce responsive documents, provide a privilege log in the event that a privilege is asserted with respect to any responsive document, or state that no responsive documents exist with respect to each of Chegianna's document requests, except for document request nos. 2, 14, 15, 16, 17, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 32, 33, 34, 35, 38, 110, 111, 121, 123, and 124. In addition, should Rumal claim that he is unable to produce documents responsive to a particular demand because such documents were destroyed in the fire that allegedly consumed his home, he is directed to produce an affidavit (signed by him) detailing the circumstances of the incident and itemizing the specific documents that were lost. Rumal must file the affidavit with the court on the same date that he provides it to Chegianna, which, again, shall be within 30 days of service of this order upon him.

11

Rumal's cross-motion for a protective order in the form of an "attorneys' eyes only" directive is denied. However, all parties are advised that estate information to which the public does not have access should not be disseminated to the public or to nonparties who might disseminate the information.

This decision constitutes the order of the court.

Clerk to notify.

Dated:    April 12, 2024

_____
S U R R O G A T E

12

[* 12]